## GWILLIM v. DONNELLAN & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Argued April 1, 1885.—Decided May 4, 1885.

In proceedings under Rev. Stat. §§ 2325, 2326 to determine adverse claims to locations of mineral lands, it is incumbent upon the plaintiff to show a location which entitles him to possession against the United States as well as against the other claimant : and, therefore, when plaintiff at the trial admitted that that part of his claim wherein his discovery shaft was situated had been patented to a third person, the court rightly instructed the jury that he was not entitled to recover any part of the premises, and to find for defendant.

These were proceedings under Rev. Stat. §§ 2325, 2326 to determine adverse claims to a mineral location. The facts are stated in the opinion of the court.

*Mr. E. T. Wells* for plaintiff in error, submitted on his brief.

*Mr. Enoch Totten* and *Mr. Charles H. Toll* (*Mr. Edward O. Wolcott* was with them on the brief) for defendants in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit begun July 7, 1881, under Rev. Stat. § 2326, to determine the rights of adverse. claimants to certain mining locations. Donnellan and Everett, the defendants in error here, and also the defendants below, were the owners of the Mendota claim, or location, and Gwillim, the plaintiff in error here, and the plaintiff below, the owner of the Cambrian. The two claims conflicted. The defendants applied, under Rev. Stat. § 2325, for a patent of the land covered by their location, and the plaintiff filed in due time and in proper form his adverse claim. To sustain this adverse claim the present suit was brought; which is in form an action to establish the right of the plaintiff to the premises in dispute, and to the possession thereof as against the defendants, on account of a " prior location thereof as a mining claim in the public domain of the United States."

The question in the case arises on this state of facts:

Upon the trial the plaintiff gave evidence tending to show that Isaac Thomas, on the 16th of May, 1878, discovered in the public domain, and within the premises described in the complaint, a vein of rock in place, bearing gold and silver, and sunk a shaft to the depth of ten feet or more, to a well-defined crevice, and located the premises under the name of the Cambrian Lode, and performed all the acts required by law for a valid location. The plaintiff got his title from. Thomas. In the answer of the defendants they set up title under the Mendota claim, located, as they allege, November 19, 1878. The plaintiff, in presenting his case to the jury, stated in effect that after the location of the claim by Thomas, and before his conveyance to the plaintiff, one Fallon instituted proceedings to obtain a patent from the United States for another claim, including that part of Thomas' claim wherein was situated the

discovery shaft sunk by him; that no adverse claim was interposed, and Fallon accordingly entered his claim and obtained a patent therefor; and, before any new workings or developments done or made by Thomas upon any part of his claim not included in this patent, the defendants entered therein and located the same as a mining claim in the public domain. Upon this statement the court "ruled that, inasmuch as that part of the claim of said Thomas, wherein was situated his discovery shaft, had been patented to a third person, the plaintiff was not entitled to recover any part of the premises, and instructed the jury to find for the defendants." This instruction is assigned for error.

Thomas made his location as the discoverer of a vein or lode within the lines of his claim. He made but one location, and that for fifteen hundred feet in length along the discovered vein. All his labor was done at the discovery shaft. There was no claim of a second discovery at any other place than where the shaft was sunk.

Section 2320 Rev. Stat. provides that "a mining claim located after the 10th of May, 1872, . . . shall not exceed one thousand five hundred feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." § 2322 gives "the locators of all mining locations, . . . so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, . . . the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of such surface location." The location is made on the surface, and the discovery must be of a vein or lode, the top or apex of which is within the limits of the surface lines of such location. A patent for the land located conveys the legal title

to the surface, and that carries with it the right to follow a discovered vein, the apex of which is within the limits of the grant downwards even though it may pass outside the vertical side-lines of the location. The title to the vein depends on the right to the occupancy or the ownership of its apex within the limits of the right to the occupation of the surface. This right may be acquired by a valid location and continued maintenance of a mining claim, or by a patent from the United States for the land.

To keep up and maintain a valid location one hundred dollars'. worth of labor must be done, or improvements made, during each year until a patent has been issued therefor. § 2324.

' By § 2325 it is provided that a patent may be obtained for land located or claimed for valuable deposits. To accomplish this a locator, who has complied with all the statutory requirements on that subject, may file in the proper land office an application for a patent under oath, showing such compliance, together with a plat and field notes of his claim, made by or under the direction of the Surveyor General of the United States, showing accurately the boundaries of the claim, which must be distinctly marked by monuments on the ground. He must also post a copy of his plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat previous to filing his application for a patent, and he must also file an affidavit of at least two persons that such notice has been duly posted. A copy of the notice must be filed in the land office.

Upon the filing of such papers the register of the land office is required to publish a notice that the application has been made for the period of sixty days in some newspaper to be by him designated as published nearest to the claim, and he must also post a similar notice for the same time in his own office.

If no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, and that no adverse claim exists; and thereafter no objection from third parties to the issue of

the patent shall be heard, except to show that the applicant has failed to comply with the law. Where an adverse claim is filed within the time, all proceedings upon the application in the land office, except in reference to the publication and proof of notice, are to be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It is then made the duty of the adverse claimant to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and prosecute the same to final judgment. After such judgment shall have been rendered, the party entitled to the possession of the claim, may, without further notice, file a certified copy of the judgment-roll with the register of the land office, together with the certificate of the Surveyor General that the requisite amount of labor has been expended, or improvements made thereon, and the description required as in other cases. When this has been done and the proper fees paid, the whole proceedings and the judgment-roll must be certified to the Commissioner of the General Land Office, and a patent shall issue for the claim or such portion thereof as the applicant shall appear from the decision of the court to rightly possess. If it appears from the decision that several parties are entitled to separate and distinct portions of the claim, each party may pay for his portion of the claim, together with the proper fees, and file the certificate and description by the Surveyor-General, and then the register must certify the proceedings and judgment-roll to the Commissioner as in the preceding case, and patents shall issue to the several parties according to their respective rights. § 2326.

A valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located. If, when one enters on land to make a location there is another location in full force, which entitles its owner to the exclusive possession of the land, the first location operates as bar to the second. *Belk* v. *Meagher*, 104 U. S. 279, 284.

To entitle the plaintiff to recover in this suit, therefore, it was incumbent on him to show that he was the owner of a valid and subsisting location of the lands in dispute, superior in right to that of the defendants. His location must be one which entitles him to possession against the United States, as well as against another claimant. If it is not valid as against the one, it is not as against the other. The location is the plaintiff's title. If good, he can recover; if bad, he must be defeated.

A location on account of the discovery of a vein or lode can only be made by a discoverer, or one who claims under him. The discovered lode must lie within the limits of the location which is made by reason of it. If the title to the discovery fails, so must the location which rests upon it. If a discoverer has himself perfected a valid location on account of his discovery, no one else can have the benefit of his discovery for the purposes of location adverse to him, except as a re-locator after he has lost or abandoned his prior right. *Belk* v. *Meagher, supra.*

In this action the plaintiff must recover on the strength of his own title, not on the weakness of that of his adversary. The question to be settled by judicial determination, so far as he is concerned, is as to his own right of possession. He must establish a possessory title in himself, good as against everybody. If there had not been a patent to Fallon, it would have been competent for the defendants to prove, on the trial, that when Thomas entered Fallon held and owned a valid and subsisting location of the same property, and was the first discoverer of the lode the apex of which was within the surface lines of Thomas' claim. Had this been done the location of Thomas would have been adjudged invalid, because the land on which his alleged discovery was made was not open to exploration, it having been lawfully located and claimed by Fallon. The admission made by the plaintiff at the trial, and on which the court acted in instructing the jury to find for the defendants, is the equivalent to such a proof. It showed that after May 16, 1878, and before November 19, 1878, Fallon had applied for a patent of the land on which Thomas' alleged discovery was made, and where he had sunk his discovery shaft;

that Thomas set up no adverse claim, that in due time Fallon got his patent, and this because under the law the United States had the right to assume that no adverse claim existed. Having failed to assert his claim he lost his title as against the United States, the common source of title to all. The issue of the patent to Fallon was equivalent to a determination by the United States, in an adversary proceeding to which Thomas was in law a party, that Fallon had title to the discovery superior to that of Thomas, and that consequently Thomas' location was invalid. This barred the right of Thomas to apply to the United States for a patent, and of course defeated his location. From that time all lands embraced in his location not patented to Fallon were open to exploration and subject to claim for new discoveries. The loss of the discovery was a loss of the location. It follows that the court did not err in its instructions to the jury, and the judgment is consequently

*Affirmed.*