[No. 359.   January 30, 1889.]

## JAMES Q. WILLS ET AL., APPELLEES, v. JAMES P. BLAIN ET AL., APPELLANTS.

MINES AND MINING—NOTICE OF RELOCATION, LEGAL EFFECT OF.—The recitals in a notice of relocation of a mining claim may be construed as solemnly admitting the validity of an original location.

ID.—SUIT IN EJECTMENT FOR RECOVERY OF POSSESSION—INSTRUCTIONS. In an action of ejectment to recover the possession of a certain mine, on the ground of an alleged prior location, made under an act of Congress of May 10, 1872, where the defendants claimed under a notice of relocation, and the only question was as to the performance by the plaintiffs of the annual labor required by the statute, an instruction to the jury that before the plaintiffs could recover they must prove some title and right to possession, by a preponderance of the evidence, and that such right must be superior to that of defendants, was a proper instruction.

APPEAL, from a judgment in favor of plaintiffs, from the Third Judicial District Court, Sierra County. Judgment affirmed.

The facts are stated in the opinion of the court.

WARREN & FERGUSSON for appellants.

The "Dread Naught" location notice and record were insufficient under the laws in force to vest right of possession in appellees, whether the record be considered upon its face or in connection with the evidence; and no amount of labor or improvements could confer a valid possessory title.   Hauswirth v. Butcher, 4 Mon. 299; Russell v. Chumasero, Id. 309; Belk v. Meagher, 3 Id. 65; Same v. Same, 104 U. S. 279.

By reference to the evidence on the question of the validity of appellees' location, outside of the face of their notice, it will be seen that such evidence wholly

fails to show the existence of any permanent monuments or natural objects, situated as called for by the recorded notice, and so as to identify the claim. Thus is absent an essential prerequisite to a valid possessory title. Pollard v. Shively, 5 Col. 309; Golden Fleece Co. v. Cable Con. C. Co., 12 Nev. 312; Funk v. Sterrett, 59 Cal. 615; Baxter Mt. M. Co. v. Patterson, 3 W. C. Rep. (N. M.) 77; Gleason v. Martin White M. Co., 13 Nev. 442; Faxon v. Barnard, 9 Morrison M. Rep. (U. S.) 515; Began v. O'Reilly, 32 Cal. 11.

W. B. Childers and W. T. Thornton for appellees.

Plaintiffs' location notice should have been admitted in evidence when first offered. It contained such a description of the claim by reference to some natural object or permanent monument as identified it, and was a valid location notice in itself. Wade's Am. Mining Law, sec. 28, p. 51; Southern Cross, etc., Co. v. Europa Co., 15 Nev. 383; Jupiter M. Co. v. Bodie Co., 7 Sawy. 96 (4 Mor. M. Rep. 411); North Noonday Co. v. Orient Co., 6 Sawy. 299 (9 Mor. M. Rep. 540); Quinby v. Boyd, 6 Pac. Rep. 466; Russell v. Chumasero; 1 Pac. Rep. (Montana) 713; Duprat v. James, 65 Cal. 558.

The object of recording is to hold the claim for a reasonable length of time, until the vein can be so developed as to admit of an intelligent marking of the surface boundaries. Gleason v. Martin White M. Co., 13 Nev. 464 (9 Mor. M. Rep. 137).

A defective record will be cured, if the stakes or monuments on the ground identify the claim. Russell v. Chumasero, 1 Pac. Rep. 713.

Courses and distances yield to monuments in mining law as well as in real estate law. Culacott v. Cash G. & S. M. Co., 6 Pac. Rep. (Col.) 211.

The effect given to mining claims can not be

greater than that which is given to the registration laws of the states, and they have never been held to exclude parol proof of actual possession, and the extent of that possession as prima facie proof of title. Campbell v. Rankin, 99 U. S. 261.

If the plaintiffs were in actual possession at the time defendants entered to locate, they could acquire no rights by such entry. Campbell v. Rankin, 99 U. S. 261; Attwood v. Fricott, 17 Cal. 17; English v. Johnson, Id. 107; Funk v. Sterrett, 59 Cal. 613; Golden Fleece Co. v. Cable Co., 12 Nev. 312 (1 Mor. M. Rep. 120); North Noonday Co. v. Orient Co., 6 Sawy. 503 (9 Mor. M. Rep. 524); Weise v. Barker, 2 Pac. Rep. (Col.) 919; Strepy v. Stark, 5 Pac. Rep. (Col.) 111.

As to what constitutes actual possession of a mining claim, and the extent of that possession see: Attwood v. Fricott, 17 Cal. 37; Faxon v. Barnard, 2 McCrary, 44 (9 Mor. M. Rep. 515); Table Mountain Co. v. Stranahan, 20 Cal. 209; Hess v. Winder, 30 Cal. 355; Rogers v. Cooney, 7 Nev. 219; Hicks v. Coleman, 25 Cal. 122, and case cited; Moore v. Thompson, 60 N. C. 120 (1 M. M. R. 221).

It is in evidence that prior to defendants' entry plaintiffs were in possession, actually working their claim, and claiming ownership up to the boundaries marked out on the ground. Faxon v. Barnard, 2 McCrary, 44; 1 Greenlf. Ev., sec. 41.

Plaintiff Wills claimed under a recorded deed, and his possession followed the deed. Abb. Tr. Ev., 635; Harris v. Equator Co., 3 McCrary, 14.

Obliteration of monuments does not divest locator's right. Jupiter Co. v. Bodie Con. Co., 7 Sawy. 96.

Plaintiffs under the strictest construction were in possession of their shaft. Faxon v. Barnard, 2 McCrary, 44; Erhardt v. Boaro, 113 U. S. 528.

It was necessary that defendants should make a

lawful discovery. This could not be done by an unlawful entry into plaintiffs' shaft. Jupiter Co. v. Bodie Co., 7 Sawy. 96; Overman M. Co. v. Cocoran, 15 Nev. 417; North Noonday Co. v. Orient Co., 6 Sawy. 299; Faxon v. Barnard, 2 McCrary, 44; Zollers v. Evans, Id. 39; Golden Terra Co. v. Mohler, 4 Mor. M. Rep. 390; Belk v. Meagher, 104 U. S. 284; Gwillim v. Donnellan, 115 U. S. 46. See, also, Crossman v. Penderly, 8 Fed. Rep. 693.

A failure to record does not work a forfeiture of the locator's rights, unless the local law expressly so declares. Jupiter Co. v. Bodie Co., 7 Sawy. 96; Johnson v. McLaughlin, 4 Pac. Rep. 132. See, also, Mt. Diablo M. & M. Co. v. Callison, 5 Sawy. 439; Ruch v. Rock Island, 97 U. S. 693; Schulenberg v. Harmian, 21 Wall. 44.

As to amendment to declaration, see Sedg. & Wait's Tr. Title to Land, sec. 464. Also Barclay v. Howell, 6 Pet. 498; Beard v. Federy, 3 Wall. 478; Blackwell v. Patton, 7 Cranch, 471.

The instructions were proper. Wade's Am. M. Law, 23, 231; Harris v. Equator M. Co., 3 McCrary, 14; Richardson v. McNulty, 24 Cal. 340; Bay Silver Mining Co. v. Brown, 10 Sawy. 243. See, also, Schools v. Risely, 10 Wall. 91; Indianapolis R'y Co. v. Horst, 93 U. S. 291.

The assignment of error on the instructions is wholly insufficient. Lucas v. Brooks, 18 Wall. 436; Supt. Ct. Rule No. 25.

LONG, C. J.—James Q. Wills, William H. Beery, and others, on the sixteenth day of August, 1887, filed a declaration in ejectment in the court below making parties defendant thereto James P. Blain and Frank B. Pitcher, who are the appellants in this court. The action was brought to recover from defendants Blain and Pitcher a certain parcel and tract of land, a mining

claim, known as the "Dead Naught Mine," situated in the county of Sierra. The defendants appeared, and pleaded not guilty. The cause was submitted for trial to a jury. The issue involved was found by the jury for the plaintiff, and judgment on the verdict of the jury was rendered in favor of the plaintiff below, Wills and others, for the possession of the mining claim. The defendants below appealed to this court, and have properly saved in the record the questions asked to be reviewed here.

The plaintiffs below, Wills and others, claimed the right to possession of the mining claim sued for, by reason of an alleged prior location under the following notice:

"Territory of New Mexico, County of Socorro—ss.: Know all men by these presents that the undersigned, under the provisions of the act of congress entitled, 'An act to promote the development of the mining resources of the United States,' approved May 10, 1872, have located fifteen hundred (1,500) feet (linear and horizontal measurement) in length on this lode, vein, or deposit of gold, silver, copper-bearing ore, or other rock in place, with three hundred (300) feet on each side, for mining purposes. This claim is situated in ———— mining district, in said county, and shall be known as the 'Dread Naught Mine,' the location and bounds being marked and described as follows, to wit: From this initial monument on north-end center of claim; thence west three hundred feet, to a monument of stone; thence south 1,500 feet, to a monument of stone; thence east three hundred (300) feet, to a monument of stone, it being south-end center of claim; thence east three hundred feet, to a monument of stone; thence north 1,500 feet, to a monument of stone; thence west 300 feet, to the place of beginning. This mine is on the eastern slope of the Black range on Mineral creek, a tributary of the Cuchilla Negra creek,

about three miles from the mines of the Cuchilla Negra mountains.

"Dated on this ground this fourth day of October, A. D. 1880.

"Attest:                                     W. H. BEERY,
    "C. F. McCONKEY,                 J. M. SMITH,
    "M. F. KILGORE.                      J. MILLER,
                                                        "Locators."

It was contended by the plaintiffs below that each and every step and act required by law to be taken to make and perfect a valid and subsisting mining claim under this location notice had been done, and that plaintiffs succeeded to all the rights of the original locators.

The defendants claim under a location notice bearing date May 13, 1887, which notice is as follows:

"Notice is hereby given that we, the undersigned, citizens of the United States, have this thirteenth day of May, 1887, claimed by right of discovery and location, and do hereby claim by virtue of such right, fifteen hundred (1,500) feet linear, and three hundred (300) feet in width on each side of the middle of the vein on this lode, vein, or deposit of mineral, along the course of the vein, with all its dips, spurs, angles, and variations, together with the amount of surface allowed by law, and all veins, lodes, or deposits of mineral whose top or apex are within said lines extended vertically downward. The said vein, lode, ledge, or deposit of mineral hereby located and claimed, as aforesaid, shall be called the 'Dictator,' and is situated in the Apache mining district, in the county of Sierra, and territory of New Mexico, in a northwest direction from the town of Chloride, in said county and territory, distance about five and one half miles from said town of Chloride, and about one quarter of a mile northwest from the village of Roundyville, situated on Mineral creek; the location or discovery shaft of this location being about one

quarter of a mile from the junction of the valley of said mineral creek with what is known as 'Dread Naught Gulch,' and on the west side of said gulch, and within about fifteen feet of a living tree standing up the hill, and west from said shaft, and marked by a big 'D' cut through the bark of said tree. The said Dictator mining claim hereby located, as aforesaid, lies partly on the same hill with, and easterly from, the patent mining claim known as the 'John A. Logan.' The said Dictator mining claim is marked and bounded as follows: Beginning at a stake and stone monument at the side of the said location or discovery shaft; thence in a northerly direction five hundred (500) feet, to a stake and stone monument marked 'North-End Center Dictator Lode;' thence westerly three hundred (300) feet, to a stake and stone monument marked 'North-West Corner Dictator Lode;' thence in a southerly direction fifteen hundred (1,500) feet, to a stake and stone monument marked 'South-West Corner of Dictator Lode;' thence three hundred (300) feet easterly to a stake and stone monument marked 'South-End Center of Dictator Lode;' thence easterly three hundred (300) feet, to a stake and stone monument marked 'South-East Corner of Dictator Lode;' thence northerly fifteen hundred (1,500) feet, to a stake and stone monument marked 'North-East Corner Dictator Lode;' thence westerly three hundred (300) feet, to a stake and stone monument, being the same as already marked, 'North-End Center of Dictator Lode.' This is a relocation of the claim known as the 'Dread Naught.'

"Witness our signatures to this location notice of the Dictator mining claim this thirteenth day of May, 1887.

"JAS. P. BLAIN,
"F. B. PITCHER,
"Witness, DON CAMERON.        Locators."

It appears in evidence that Blain and Pitcher, believing that the annual labor required by law was

not done in 1886 under the Dread Naught Claim, undertook themselves to relocate the claim; and the principal question for determination is the legal effect of their location notice above set out. The court below, in its rulings, narrowed the question to the point whether or not the plaintiffs had each and every year after the attempted location under the Dread Naught notice performed the annual labor of the value of $100, as required by the laws of the United States. The instructions of the court on this point are as follows:

".The court instructs the jury that the defendants' location certificate offered in evidence does not purport to be, and is not, an original location of a mining claim, but is a relocation of the claim known as the 'Dread Naught,' the right to the possession of which the plaintiffs claim, and, as they set up title only as the relocators of the original lode claim, they impliedly admitted the validity of the prior location. There can be no relocation unless there has been a prior valid location, or something equivalent, of the same property." To the giving of which instruction defendants then and there excepted.

The court instructed the jury that if they believe from the evidence that the defendants' location was a relocation of the Dread Naught, and that plaintiffs were owners of said Dread Naught claim, then defendants' relocation admits the validity of plaintiffs' location; and if the jury should further find from the evidence that plaintiffs had done, or expended, at least $100 in labor and improvements on said claim during the calendar year 1886, and that the defendants entered upon said claim, and attempted to relocate the same, after the performance of said labor and improvements, then they should find for the plaintiffs. To the giving of which instruction defendants then and there excepted.

On the one part the appellees cite the case of Belk

v. Meagher, 104 U. S. 284, in support of the principle enumerated in the instructions given, and on the other it is contended that the expressions in that decision which seem to support the contention of the appellees are mere chance words, and not intended as announcement of any rule. The facts in Belk v. Meagher are substantially these.

MINING claim: notice of reloca- tion, legal effect of.

Humphreys and Allison were originally locators of a mining claim on mineral land of the United States. On the nineteenth day of December, 1876, Belk, the plaintiff, regarding the location of Humphreys and Allison as forfeited by reason of an alleged failure on their part to perform the annual labor of $100 required by law, attempted himself to acquire a right to the claim; and on that day made a location notice, and performed the other acts necessary to constitute a valid relocation of the Humphreys and Allison mine. In the location notice Belk described his claim as a relocation of the original Humphreys and Allison lode. On the twenty-first day of February, A. D. 1887, Meagher attempted to acquire a right to the same mining claim, and he posted up his notice, and performed all the acts required by law to constitute a valid location. Thus the parties stood. One claimed under the location of December, 1876; the other under that of February, 1877. Belk brought an action of ejectment against Meagher to recover possession of the mining claim, and the latter asserted that when Belk made his location the claim had not then been forfeited by Humphreys and Allison, but that, to the contrary, they had until the thirty-first day of December, 1876, including that day, in which to perform the annual work required for that year, and therefore that in December, 1876, the claim was not opened to relocation. In this position of the parties in that case it was evidently important for Meagher, the affirmative of the issue being on Belk, to show that the claim of Humphreys and Allison

was originally a valid claim, and that it continued so during the whole of the year 1876. So the validity of the location of Humphreys and Allison was directly in issue; because if there was a valid location, and if the ground was not open to further location during that year, the claim of Belk must fail. The mind of the court must have been directed to the validity of the original location, and the legal effect of the recital that Belk was a relocator, contained in his notice.

The court says: "Mining claims are not open to relocation until the rights of former locators have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he can not do until the discoverer has in law abandoned his claim, and left the property for another to take it up." At this point of that decision the court is considering the relative rights of an original locator and a relocator of a mining claim. Later in the opinion the court turned away from a consideration of these relative rights and considered a question of evidence, and in that consideration is involved a determination of the legal effect of the recitals in Belk's relocation notice.

The court say: "It remains to consider the various exceptions taken to the admission and rejection of evidence. * * * As to the admission of the books from the office of the recorder of Deer Lodge county to prove the record of the location of the original lode claim by Humphreys and Allison, as Belk sets up title only as a relocator of part of the original lode claim, he impliedly admits the validity of the prior location. There can be no relocation unless there has been a prior valid location, or something equivalent, of the same property. It is nowhere disputed that Humphreys and Allison were the locators of and owners of the claim originally. The proof of the record was

therefore probably unnecessary; but, if not, it seems to us the book was sufficiently authenticated."

It is not quite clear who offered in evidence in the trial court the books from the office of the recorder of Deer Lodge; but the supreme court say the purpose of the offer was "to prove the location of the original lode claim by Humphreys and Allison." There could be only one reason why it became important to make such proof, and that was to invalidate Belk's relocation, on the ground that in December, 1876, the mining claim was, in legal contemplation, in the possession of Humphreys and Allison, and not subject to relocation. It is quite apparent the court intended to pass upon the legal effect of the recitals in Belk's notice, and did not, by inadvertence, use mere chance words, conveying the idea of a rule to which the court did not intend to commit itself. It would seem the court intended to distinguish between a locator and a relocator; classing the former as an original discoverer of mineral before unknown, and the latter as the mere appropriator of mineral discovered by another, and forfeited by reason of his failure to perform the annual work of $100 required by law.

The statute relating to the relocation of mining claims seems to indicate, by the phraseology used, that a relocator stands in an attitude different from that of an original locator. It says: "On each claim located after the tenth day of May, 1872, and until a patent has been issued therefor, not less that one hundred dollars' worth of labor shall be performed or improvements made during each year. * * * Upon a failure to comply with the foregoing conditions [of annual expenditure] the claim or mine upon which such failure occurred shall be open to relocation, in the same manner as if no location of the same had ever been made." The original locator is a discoverer, and holds

only on condition that he makes the annual expenditure required by law.

The relocator, when he so describes himself in the notice, solemnly admits, in an instrument which is made a matter of record, that he is not a discoverer of mineral, but an appropriator thereof, on the ground that the original discoverer had forfeited his right. The notice becomes in some sense an instrument of title—a record. It is the equivalent of an admission of record to the original locator, that the relocator claims a forfeiture by reason of a failure on the part of the first locator to make his annual expenditure. This we believe to be the doctrine of Belk v. Meagher, supra, and on that authority sustain the instruction of the court below on that point.

The appellant also complains of the following instruction given by the court below: "The court instructs the jury that this is a possessory action, to recover an unpatented mining claim, and that the question involved in the case is whether the plaintiffs or defendants have the better right to the possession of the mining claim in question; and they should find for the party who has this better right, as determined by them from the evidence before them, under the law as declared in the instructions of the court."

Standing alone, we would hesitate to hold that this instruction contains a full statement of the law, so NOTICE of reloca- as to enable the jury fully to grasp the tion: annual la- bor: title: in- legal question necessary for its considera- structions. tion; but the court gave an additional instruction, which should be construed and taken with the one to which the objection is urged. This later instruction is as follows: "As stated in the instruction already given, the plaintiff can recover alone by showing a better title and better right to the immediate possession of those premises than the defendants have shown. In other words, they must have a preponder-

ance of proof in their favor." The nature of the evidence to which this instruction was applicable should be borne in mind, in passing upon its sufficiency. The defendants, by the recitals of their relocation notice, had conclusively, as we think, admitted the validity of the plaintiffs' original location; so there was but the single issue of fact before the jury, and that was as to the performance by the plaintiffs of the annual labor each year as required by law. There was no question whether some outstanding title in another was not higher and better than that of the plaintiffs; but the single question whether the annual work has been done as required by law. As applied to that state of the evidence, we think the jury might have fairly construed the instruction to mean that the plaintiffs must, by a preponderance of the evidence, prove in themselves, before they could recover, some title and a right of possession, and that the title and right so proved must be better than that of the defendants. It will be remembered that the statute of the United States does not confer title on the locator, in the technical legal sense of that term, considered strictly; but rather, in the language of that statute, only "the exclusive right of possession and enjoyment," leaving the technical legal title in the United States, to be afterward conveyed by patent to whomsoever may be entitled thereto on proper application.

The peculiar right which the holder of a valid location of mineral lands has is thus defined in Gwillim v. Donnellan, 115 U. S. 49. "A valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statute of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located."

It may very well be, where one claiming to be the owner of a mining claim files in the proper land office

his application for a patent, and an adverse claim is filed thereto, and an action is instituted between such contending parties, that the plaintiff in such action should be required, to entitle him to recover, to show a clearer and stronger right and title than where it is a contention about possession only for present mining purposes, because in the former case a patent may issue on the record there made; and in such case the court may well be required to make the instructions clear and full. But in this case, where the contention is only as to the performance of annual work, it seems to us sufficient to instruct the jury that the plaintiff must prove some title and right to the possession of the claim by a preponderance of the evidence, and that such right must be better than that of the defendant; and that is the effect, as we construe it, of the instruction below. We do not find the instructions of the court below to be erroneous.

This disposes of all the questions seriously pressed upon our consideration.

The judgment below is affirmed.

BRINKER and REEVES, JJ., concur.