CASCADEN et al. v. BORTOLIS.

(Third Division.   Fairbanks.   December 15, 1906.)

No. 259.

1. EJECTMENT (§§ 9, 95*)—TITLE TO MAINTAIN—EVIDENCE.

   In ejectment, the plaintiff must recover upon the strength of his own title, which must be sufficiently established to warrant a verdict in his favor.

   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 16–29; Dec. Dig. §§ 9, 95.*]

2. MINES AND MINERALS (§ 14*)—PLACER MINES—LOCATION.

   To constitute a valid location of a placer mine in Alaska, there must be (1) an actual marking of the boundaries, and (2) the marking must be sufficient to enable the boundaries to be readily traced, and (3) the notice of location must be recorded, and (4) the notice must be sufficient, and (5) there must be an actual discovery of gold or other mineral within the limits of the claim located, and (6) it must be sufficient to justify a prudent person in expending his time, labor, or money in further exploitation.

   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 18–50;   Dec. Dig. § 14.*]

3. MINES AND MINERALS (§ 38*)—LOCATION OF MINE—DISCOVERY—EVIDENCE.

   Plaintiffs brought suit in ejectment to recover a lot in Gates City, being a part of a placer mining claim which was located by the plaintiff Cascaden.   In support of their title to the placer claim, and in support of their discovery and the sufficiency of the mineral therein to justify further exploration, plaintiffs offered evidence that other and adjoining claims contained valuable deposits of placer gold, and offered the conclusion that there was therefore a probability that the gold-bearing gravels upon the adjoining claims extended into and upon the claim of plaintiffs. *Held*, the evidence was excluded for two reasons: (1) Because the statute of the United States provides that no location of a mining claim shall be made until the discovery of mineral within the limits of the claim, and that proof of the presence of mineral

on other and adjoining claims is not sufficient to establish any element of discovery on the claim in question; and (2) the admitted facts in the case conclusively establish that the pay gravels on the adjoining claims are many feet below the bed rock on plaintiffs' hillside claim, and the evidence offered only tends to lead the jury upon a false issue.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 38.*]

Motion for a new trial, for error of law occurring at the trial and excepted to by the plaintiffs at the time, in this: That the court erred in sustaining objections made by the defendant to testimony offered by the plaintiffs from the witnesses Dave Yarnell and Hans Stark, and excluding the testimony of said witnesses offered by the plaintiffs, showing the general configuration of the valley of Cleary creek above and below the Cascaden placer that a valuable pay streak had been discovered upon Discovery claim, and upon the bench upon the right limit of Cleary creek opposite to discovery, which are about 1,000 to 1,500 feet upstream from the Cascaden bench, also upon No. 1 below discovery and the Hilty fraction adjoining, prior to the location of the Cascaden placer by John Cascaden, and from showing by said witnesses generally the character of the deposits found upon the claims mentioned, prior and subsequent to the location by Cascaden, and the results of mining operations, and the effect of finding of a run of coarse gold on the bench opposite to discovery, and on the creek claims and bench claims above and below the Cascaden placer, the probabilities that said coarse run of gold passed across the lower part of the Cascaden placer, the work done by the witness Dave Yarnell upon his claim adjoining immediately below the Cascaden placer, the result of such work, and the fact that he had run tunnels up the hill to within 250 feet of the lower line of the Cascaden ground, and further showing generally

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

by said witness that the Cascaden placer is in a mineral-bearing belt with producing mines lying adjacent and above and below it on Cleary creek.

The motion also alleges as error the giving of an instruction defining discovery; but the following instruction, a part thereof, is all that need be examined here:

"You are instructed that evidence of mining, extensive or otherwise, or of the value of gold deposits, on other and adjacent claims, must not be accepted by you as evidence of a discovery on the plaintiffs' claim. Such knowledge might have justified the plaintiff Cascaden in locating the ground in dispute in the hope that it, too, contained gold; but such facts are not evidence of the existence of gold on the claim in dispute. The proofs of discovery must be such as to establish the fact of finding mineral on the claim in dispute, within its outer boundaries. It must be a finding of mineral in fact, and not in theory; and the mineral found must be in such quantity and found under such circumstances and conditions as would justify a man of ordinary prudence, not necessarily a skilled miner, in the further expenditure of his time and money in further work and labor in developing the claim. If plaintiff Cascaden, or any of plaintiffs' employés, did so find mineral on that claim to that extent, it is sufficient to constitute a discovery, and you should so find. But proof of finding gold in large or small quantities on other claims is not evidence of a discovery on the claim in dispute, and you should not so consider it."

Louis K. Pratt and J. J. Rogers, for plaintiffs.
Heilig & Tozier, for defendant.

WICKERSHAM, District Judge. This is an action in ejectment to recover possession of a town lot. The plaintiffs for cause of action against the defendant allege:

"That at all times mentioned herein, and since April 15, 1904, they were the owners in fee, against all persons except the United States, and entitled to the possession, of the following described lots or parcels of real property, situate in the town commonly known as Gates City, in the Fairbanks recording district, in the said territory of Alaska, to wit."

And then follows the description of lot 33, in block 1, and a portion of another lot, with the buildings thereon. Other allegations of the complaint allege ouster by the defendant, the rental value of the lot, and a demand for judgment.

Defendant in his answer alleges that in September, 1904, he entered upon the ground, and that it was then vacant, unappropriated land of the United States; that he built two log cabins thereon, and has been in the personal use and occupation thereof ever since. He also alleges that thereafter many other persons constructed houses around him in what is now a town of more than 300 inhabitants, and alleges that he is the owner of the lots and entitled to their possession. The plaintiffs' reply denies the allegation of the answer, except the actual possession of defendant, and reiterates the allegation that the lots, when so entered upon by the defendant, "were the private property" of the plaintiffs, "and were at the date of the commencement of this action the property of all said plaintiffs." There was a trial by jury, and a verdict for defendant.

It was not until the plaintiffs introduced their evidence that the court and jury were informed of the nature of plaintiffs' title. The title tendered by the evidence in support of plaintiffs' ownership was a placer mining location made by John Cascaden on January 5, 1904. It is not alleged that plaintiffs were in the actual possession of the ground when the defendant entered thereon in September, 1904, and built a cabin. Neither actual possession nor actual ouster is alleged. The possession of the plaintiffs at the time of defendant's entry and the ouster was constructive. Cascaden testified that he was not in actual possession of the claim when Bortolis and others entered thereon in November, 1904, and built cabins. Since plaintiffs do not rely on actual possession and actual ouster, they must affirmatively establish a better right and title to the ground than that admitted by

the defendant by his possession. They must establish a valid placer mining location made by John Cascaden. Their right to the possession comes only from a valid location. Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735. The location is the plaintiffs' title. If good, he can recover; if bad, he must be defeated. Gwillim v. Donnellan, 115 U. S. 45, 50, 5 Sup. Ct. 1110, 29 L. Ed. 348.

In civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory the finding shall be according to the preponderance of evidence. Section 673, Code of Civil Procedure. The action is ejectment. The plaintiffs must recover on the strength of their own title, and not upon the weakness of the defendant's. Dunbar v. Green, 198 U. S. 166, 168, 25 Sup. Ct. 620, 49 L. Ed. 998, It is elementary law that the plaintiff in ejectment must recover upon the strength of his own title, which must be sufficiently established to warrant a verdict in his favor. McGuire v. Blount, 199 U. S. 142, 144, 26 Sup. Ct. 1, 50 L. Ed. 125.

Three facts must be proved to constitute the valid placer mining location which the plaintiffs tender as their title: In Alaska (1) an actual marking of the boundaries must be made (section 2324, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1426]), and (2) it must be sufficient to enable the boundaries of the claim to be readily traced (1 Lindley on Mines, § 373; Book v. Justice [C. C.] 58 Fed. 106, 113); (1) the notice of location must be recorded (section 15, Act June 6, 1900 [31 Stat. 327]), and (2) the notice must be sufficient (1 Snyder on Mines, § 416; Hammer v. Garfield Min. Co., 130 U. S. 291, 298, 9 Sup. Ct. 548, 32 L. Ed. 964); and there must be (1) an actual discovery of gold or other mineral within the limits of the claim located (section 2320, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1424]; King v. Amy & S. Min. Co. 152 U. S. 222, 14 Sup. Ct. 510, 38 L. Ed. 419), and (2) it

must be sufficient to justify a prudent person in expending his time, labor, or money in further exploitation (Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 404, 12 Sup. Ct. 543, 36 L. Ed. 201; Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770). No question is raised on the motion for a new trial in this case which makes it necessary to consider the element of marking and recording; but the element of discovery must be considered, as the testimony excluded went to that point.

By section 2329, Rev. St. (U. S. Comp. St. 1901, p, 1432), placer claims are—

"subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims."

By section 2320, Rev. St. (U. S. Comp. St. 1901, p. 1424):

"No location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

See Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770.

In all legislation, whether of Congress or of the state or territory, and by all mining regulations and rules, discovery and appropriation are recognized as the sources of title to mining claims, and development, by working, as the condition of continued ownership until a patent is obtained. There must be something beyond a mere guess on the part of the miner to authorize him to make a location which will exclude others from the ground, such as the discovery of the presence of the precious metals in it, or in such proximity to it as to justify a reasonable belief in their existence. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113. It is a rule among miners on the public lands, so often brought to our attention and so often declared that we may speak of it as part of our judicial knowledge, that discovery and appropriation are the source of title of mining claims, and that

development by working is the condition of their continued possession. Jennison v. Kirk, 98 U. S. 453, 457, 25 L. Ed. 240; Jackson v. Roby, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990. This was the rule before Congress by its legislation sanctioned it. O'Reilly v. Campbell, 116 U. S. 418, 422, 6 Sup. Ct. 421, 29 L. Ed. 669. The preceding section 2320 prescribes the extent to which mining claims upon veins or lodes of quartz, or other rock in place, bearing gold, silver, or other valuable deposits on lands of the United States, may be taken after May 10, 1872. It allows a claim to be located to the extent of 1,500 feet along the vein or lode, but provides that no location shall be made until the discovery of the vein or lode within the limits of the claim located, which is, in effect, a declaration that locations resting simply upon a conjectural or imaginary existence of a vein or lode within their limits shall not be permitted. A location can only rest upon an actual discovery of the vein or lode. King v. Amy & S. Min. Co., 152 U. S. 222, 226, 227, 14 Sup. Ct. 510, 38 L. Ed. 419. In United States v. Iron Silver Min. Co., 128 U. S. 673, 675, 9 Sup. Ct. 195, 32 L. Ed. 571, the court said:

"The statutes providing for the disposition of the mineral lands of the United States are framed in a most liberal spirit, and those lands are open to the acquisition of every citizen upon conditions which can be readily complied with. It is the policy of the government to favor the development of mines of gold and silver and other metals, and every facility is afforded for that purpose; but it exacts a faithful compliance with the conditions required. There must be a discovery of the mineral, and a sufficient exploration of the ground to show this fact beyond question. The form, also, in which the mineral appears, whether in placers or in veins, lodes, or ledges, must be disclosed so far as ascertained. Misrepresentations knowingly made as to these matters by the applicant for a patent will afterwards justify the government in proceeding to set it aside."

The conditions with which the locator must faithfully comply in acquiring a valid placer mining location are marking,

recording, and discovery. Without there is an *actual* discovery of mineral within the limits of the claim, there is no valid location; and also, without there is a *sufficient* discovery of mineral within the limits of the claim located to justify a prudent person in the expenditure of money and labor in the exploitation for mineral, there is no valid location. In Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770, there was an admitted *actual* discovery, but the court held it insufficient, saying:

"There was not enough in what he claims to have seen to have justified a prudent person in the expenditure of money and labor in exploitation for petroleum. It merely suggested the possibility that the ground contained oil sufficient to make it 'chiefly valuable therefor.'"

And in the case of Iron Silver Co. v. Mike & Starr Co., in discussing the question of the sufficiency of discovery, the court said:

"It is, after all, a question of fact for the jury. It cannot be said, as a matter of law in advance, how much of gold or silver must be found in a vein before it will justify exploitation and be properly called a 'known' vein." Iron Silver Co. v. Mike & Starr Co., 143 U. S. 394, 404, 12 Sup. Ct. 543, 546, 36 L. Ed. 201.

The United States offers to dispose of its mineral lands to the miner who shall mark the boundaries of his claim, record his notice of location, and make a "discovery * * * within the limits of the claim located." The offer is statutory, fixed, and certain, and, to use Mr. Justice Field's words, the government "exacts a faithful compliance with the conditions required." This faithful compliance with the conditions required is the consideration which the miner pays for the land. This court can neither add to nor subtract from the consideration demanded by the government and agreed to by the miner. In considering this class of questions this court is frequently reminded of Judge Hawley's expression

in Migeon v. Montana Cent. Ry. Co., 77 Fed. 249, 23 C. C. A. 156, that:

"It was never intended in such cases that the courts should weigh the scales to determine the value of the mineral found as between prior and subsequent locators of a mining claim on the same lode."

That sentiment can certainly have no force in this case. If the plaintiff located the claim by marking its boundaries so that they could readily be traced, recorded his notice of location within the time required by law, and actually discovered sufficient gold within the limits of the claim located to justify a prudent person in expending time, money, or labor in the further development of the ground, he is entitled to a verdict, and it is immaterial what defendant may have done on the ground thereafter. On the other hand, if the plaintiff did not so mark, record, and discover, the verdict should be against him, and, again, it is immaterial what defendant may have done on the ground thereafter. The location is the plaintiff's title. If good, he can recover; if bad, he must be defeated. Gwillim v. Donnellan, 115 U. S. 45, 50, 5 Sup. Ct. 1110, 29 L. Ed. 348. These seem to be rules of discovery: (1) There must be an *actual* (2) and a *sufficient* discovery (3) within the limits of the claim located, and (4) discovery is a question of fact for the jury.

The real question on this motion, however, arises on the rejection of testimony offered of mining on adjacent claims in support of plaintiffs' evidence of discovery. Objection was sustained to this class of testimony upon the ground that it did not tend to prove a "discovery * * * within the limits of the claim located."

Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348, concluded one phase of this question. There Thomas sunk a discovery shaft, found mineral, and located the claim. Another claim was thereafter located, overlapping the Thomas claim and covering his discovery shaft. This

locator applied for and obtained patent, including Thomas' discovery shaft.

"Thomas made his location as the discoverer of a vein or lode within the lines of his claim. He made but one location, and that for 1,500 feet in length along the discovered vein. All his labor was done at the discovery shaft. There was no claim of a second discovery at any other place than where the shaft was sunk."

Basing its conclusion upon section 2320, Rev. St., which provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located," the court held that, because the discovery shaft of the Thomas claim had been patented to another and thereby he had made no discovery within the limits of the remaining portion of his claim, it was void. The court said:

"A location on account of the discovery of a vein or lode can only be made by a discoverer, or one who claims under him. The discovered lode must lie within the limits of the location which is made by reason of it. If the title to the discovery fails, so must the location which rests upon it. * * * The loss of the discovery was the loss of the location."

The court held the Thomas location void, and the unpatented portion subject to entry and location by another, for want of discovery within the limits of the claim. 1 Lindley on Mines, § 333; 1 Snyder on Mines, § 351. The evidence of the existence of mineral within the limits of a location must be more than mere "belief," or "hopes and beliefs." Iron Silver Min. Co. v. Reynolds, 124 U. S. 374, 384, 8 Sup. Ct. 598, 31 L. Ed. 466. The character of the proofs necessary to establish the fact was also discussed by the United States Supreme Court in the case of Iron Silver Co. v. Mike & Starr, 143 U. S. 394, 12 Sup. Ct. 543, 36 L. Ed. 201, in which case Justices Field, Harlan, and Brown dissented. In Brown-

3 A.R.—14

field v. Bier, 15 Mont. 403, 39 Pac. 461, the Supreme Court of Montana, speaking of that dissent, said:

"But in that case the contention within the court seems to us to have been more upon the question of facts in that particular case than upon a view of the law. We therefore feel that, as to the law, we may with propriety quote from both the prevailing and dissenting opinion."

And also the United States Circuit Court of Appeals, Ninth Circuit, quoted from that dissenting opinion in the case of Migeon v. Montana Central Ry. Co., 77 Fed. 249, 255, 23 C. C. A. 156, as correctly stating the law.

Upon the character of proofs necessary to establish the fact of mineral within the limits of a mining claim the dissenting judges said (143 U. S., at pages 423, 425, 426, 427, 430, 12 Sup. Ct., at pages 552–555):

"As stated above, there can be no location of a lode or vein until the discovery of precious metals in it has been had. * * * In the case at bar, as stated above, the alleged location of the lode of the defendant was not preceded by the discovery of any precious metals within it. There was, therefore, in fact no lode to locate, and, of course, no location initiated or measurement possible. Rev. St. § 2320. No weight ought to be given to a defense resting upon such a basis. The court below should have insisted upon proof of the discovery of mineral in the alleged lode claim of the defendant, or have directed a verdict as moved in favor of the plaintiff. * * * Much of the evidence received at the trial was also subject to serious objections. To show that the alleged lode of the defendant was known to exist before the patent was issued, the court below allowed evidence, against the objection of the plaintiff, to be introduced that there were other lodes in the vicinity of the placer claim of the plaintiff, and also of the placer claim of Wells and Moyer, and also evidence that parties in the neighborhood believed that there was a vein or lode lying under those placer claims, and also evidence of conversations in 1877 with one Stevens, who only acquired his interest, by purchase with one Leiter, from the patentee more than a year after the patent was issued, as to his opinion of the existence of mineral *underlying all the ground* where he had men at work, although

the ground thus loosely designated was not shown to have covered. the premises in controversy. * * * Testimony of the same gen.. eral character, though less full in detail, in reference to the same and other claims in the vicinity of the placer claim, was given by other witnesses. * * . * The error of this course of procedure and its tendency to mislead the jury are manifest. The existence of a lode covering everything or running through the whole country was not a matter to be assumed, or to be shown by evidence of the existence of different lodes in the vicinity of the placer claim. If such an extended lode existed, its existence was to be established, as any other matter of fact in the case, by competent proof. There is no necessary connection between the existence of lodes outside of a placer claim and one in it. It is true there may be instances, or at least they may be supposed, where the general condition and developments of a mining lode adjoining a placer claim may establish the fact that a lode enters within such claim, as, for example, where the working of the lode is up to the line of the placer claim, and the lode continues to the point of contact. One then can satisfy himself, by examination, of the penetration of the lode to some extent within the claim. But no such knowledge can come from the workings of lodes at a distance from a placer claim as in this case. It is a matter well known to persons at all familiar with mining for the precious metals that veins rich in gold and silver are generally found with barren rock within a few feet on each side of them, and that such veins more frequently than otherwise come abruptly to an end. No one thus familiar would feel justified in concluding from the mere distance or vicinity of other mines that they had any necessary connection with each other. In accordance with this doctrine, this court held, in Dahl v. Raunheim, 132 U. S. 260, 269 [10 Sup. Ct. 74, 33 L. Ed. 324], that the discovery by the defendant in that case of a lode 200 or 300 feet outside of the boundaries of the placer claim in suit did not 'create any presumption of the possession of a vein or lode within those boundaries, nor, we may add, that a vein or lode existed within them.' The admission of the evidence in question was well calculated to confuse the jury and mislead their judgment. * * * Of the inadmissibility of this kind of evidence to establish the existence of a valuable vein or lode of mineral and knowledge of it by the patentee on his application for the patent, it would seem there could be no question. The opinions and belief of the neighborhood do not show knowledge of the existence of a lode or vein of

valuable mineral." * * * The record in this case affords a good illustration of what may be expected if loose testimony of the character mentioned can be received upon a trial of this kind. It contains a mass of hearsay testimony, irrelevant gossip, geological impressions of the neighborhood, and loose recollections of miners of what had transpired years before, or of what was believed to exist, all mingled together and admitted by the court as going to prove the existence of a lode and knowledge of its existence on the part of the placer applicant. If out of such materials a patentee can be deprived of his property years after the issue of a patent, that instrument will be worse than useless to him. It will prove a delusion and a snare, luring him on to large expenditures, only to make more complete his ultimate ruin. It will afford no security against mere surmises, suppositions, and beliefs, but leave him to be overwhelmed by them. In my opinion, the judgment should be reversed, and a new trial awarded."

Considered with Iron Silver Co. v. Mike & Starr Co., and decided on the same day, was the case of Sullivan v. Iron Silver Min. Co., 143 U. S. 431, 12 Sup. Ct. 555, 36 L. Ed. 214, involving the same mining claim. The court in the latter case agreed upon the facts and the character of the evidence, and the unanimous court, Mr. Justice Field specially concurring, held the rule of evidence to be as the dissenting judges did in the former case. The court in this latter case concluded:

"And after that defendants offered a mass of testimony, the scope of which was similar to that condemned as insufficient in the case of Iron Silver Mining Co. v. Reynolds, supra, 124 U. S. 374 [8 Sup. Ct. 598, 31 L. Ed. 466]. Its purport was that it was commonly believed that underlying all the country in that vicinity was a nearly horizontal vein or deposit, frequently called a 'blanket vein,' and that the parties who were instrumental in securing this placer patent shared in that belief, and obtained the patent with a view to thereafter developing such underlying vein. But whatever beliefs may have been entertained generally, or by the placer patentees alone, there was up to the time the patent was obtained no knowledge in respect thereto. It was, so far as disclosed by this testimony, on the part of everybody, patentees included, merely a matter of specula-

tion and belief, based, not on any discoveries in the placer tract, or any tracings of a vein or lode adjacent thereto, but on the fact that quite a number of shafts sunk elsewhere in the district had disclosed horizontal deposits of a particular kind of ore, which it was argued might be merely parts of a single vein of continuous extension through all that territory. Such a belief is not the knowledge required by the section. In the case referred to this court said: 'There may be difficulty in determining whether such knowledge in a given case was had, but between mere belief and knowledge there is a wide difference. The court could not make them synonymous by its charge, and thus in effect incorporate new terms into the statute.' So, giving full weight to all the testimony offered by the defendants, both as to the workings and discoveries after the patent, and the speculations and beliefs existing prior to its issue, the court should have directed a verdict, as it did, for the plaintiff, and the only error was in giving a wrong reason for a correct instruction." Sullivan v. Iron Silver Min. Co., 143 U. S. 431, 435, 12 Sup. Ct. 555, 36 L. Ed. 214.

In Dahl v. Raunheim, cited by Mr. Justice Field in the dissenting opinion, supra, the question was squarely met and decided by the unanimous court as follows:

"We may also add, to what is thus concluded by the verdict, that there was no evidence of any lode existing within the boundaries of his claim, either when the plaintiff made his application or at any time before. The discovery by the defendant of the Dahl lode, 200 or 300 feet outside of those boundaries does not, as observed by the court below, create any presumption of the possession of a vein or lode within those boundaries, nor, we may add, that a vein or lode existed within them." Dahl v. Raunheim, 132 U. S. 260, 263, 10 Sup. Ct. 74, 75, 33 L. Ed. 324.

The Supreme Court of Montana, in deciding the Dahl Case, said:

"The discovery shaft of the Betsy Dahl lode was not within the boundaries of the placer claim, but was 200 or 300 feet outside of said boundaries, and the theory that the vein ran within said boundaries was the merest speculation, without any evidence to support it. There were no indications of a lead or vein on the surface within the boundaries of the placer claim. There is no proof whatever that the

respondent was in possession of a vein or lode within the boundaries
of his placer application.  There is no proof that any such vein or
lode existed.  The discovery of the Betsy Dahl lode 200 or 300 feet
outside of such boundaries raises no presumption of the possession
of a vein or lode by the respondent within the boundaries of his
placer claim.  *  *  *  But no such presumption arises in a case
where the discovery is outside of such boundaries, and there is no
indication of a lode within them."   Raunheim v. Dahl, 6 Mont. 167,
9 Pac. 892.

Directly in point, too, is the opinion of Judge Morrow, in
United States v. Central Pac. Ry. Co. (C. C.) 93 Fed. 871,
873, where he said:

"There appears to be a channel of gold-bearing gravel running
through some of the contiguous land; but this fact cannot, of itself,
give the land in section 7 a substantial mineral character, unless the
section itself contains land valuable chiefly for its gold-bearing min-
eral."

And the decision of the Supreme Court of Colorado in
Michael v. Mills, 22 Colo. 439, 45 Pac. 429, where that court
said:

"The plaintiff asked the court, in substance, to instruct the jury
that, to constitute a valid location of a lode mining claim, it was not
necessary that a vein or lode of mineral-bearing rock in place should
be discovered within the limits of the claim attempted to be located,
but that a valid location might be made, if in other respects comply-
ing with the law, if the discovery of a vein is made by the locator
upon an adjoining location owned by him and others, which vein, if
maintaining the same strike as at the point of discovery, would pass
into the claim attempted to be located, although, as a matter of fact,
the vein is not traced, or shown to have passed, into the latter loca-
tion.  This contention is based upon supposed analogy existing be-
tween annual assessment work, which may, in certain circumstances,
be done outside the claim, and a valid discovery, which is a condi-
tion precedent to a valid location in the first instance.  This conten-
tion is contrary to all previous announcements upon this subject, finds
no support in the federal or state statutes, and, in the absence of a
decision by the Supreme Court of the United States to that effect,

we decline to establish such a doctrine, and upon unappropriated territory. Rev. St. U. S. § 2320; Gen. St. Colo. 1883, § 2401 et seq.; Mills' Ann. St. § 3152; Armstrong v. Lower, 6 Colo. 393."

From the foregoing authorities it seems to follow that (1) the burden is on the plaintiff to prove his prior valid title to this lot; (2) the location of the mining claim is the plaintiffs' title; if good, he can recover; if bad, he must be defeated; (3) there can be no valid location of a mining claim without an actual and sufficient discovery of mineral within the limits of the claim located; (4) mere surmises, speculations, beliefs, or geological theories or impressions of the existence of minerals on the claim located are not facts from which discovery thereon may be presumed; (5) proof of the existence of minerals on other claims 200 or 300 or more feet, or any other distance, outside of plaintiff's boundaries does not create any presumption, and is no proof, of the existence of minerals within those boundaries, and is not such proof as will justify the locator to expend money or labor on the claim located; and (6) in ejectment to recover a mining claim the plaintiff must establish the fact of his discovery by a fair preponderance of the evidence, and must show clearly that he did make an actual and sufficient discovery of mineral within the limits of the claim located and in controversy.

"Gold is where you find it" is the wisdom of the miners' experience. Mr. Justice Field only amplified this mining truth in his dissenting opinion in Iron Silver Co. v. Mike & Starr Co., supra, when he said:

"It is a matter well known to persons at all familiar with mining for the precious metals that veins rich in gold and silver are generally found with barren rock within a few feet on each side of them, and that such veins more frequently than otherwise come abruptly to an end. No one thus familiar would feel justified in concluding, from the mere distance or vicinity of other mines, that they had any necessary connection with each other."

This applies as well to placer mines as to lode claims. It is a matter of common knowledge, and so frequently demonstrated to this court in trials before it as to be almost within the rule of judicial knowledge, that one claim may be rich in placer gold, while the claims on each side of it are utterly barren and worthless, and this applies to Cleary creek, where the now well-defined pay streak proves the rule. Evidence of the existence of gold in paying quantities on the pay streak claim would be no proof of its existence on side, though adjoining, claims. It would, of course, be such evidence as would encourage the owner in exploring the side claim in the hope of finding it there also; but this court knows, and it is common knowledge, that it is so frequently not there as to justify the shrug of the working miner and his sage conclusion that "gold is where you find it."

The admitted facts in this case, however, demonstrate that the evidence was rightly excluded for another reason. The plaintiff in his original location notice named this the "Hillside claim." It is admitted by all parties to lie on the hillside above the valley of Cleary creek; that the ground rises from the front lower line of the claim at the rate of 15 or 20 feet to the 100; that the hole in which plaintiffs allege they found the 13-cent prospect reached bed rock at a depth of 8 feet. The undisputed and admitted evidence of the defendant's witnesses was that broken slabs of bed rock were exposed over the surface of the claim, and that bed rock was reached with slight excavations, though two shafts were sunk by the plaintiffs about 26 feet deep. The plaintiff Cascaden testified that Yarnell's workings were 300 or 400 feet below his lower line, O, down hill toward Cleary creek. If the drop of the hill were only 15 feet to the 100, this rate would bring the surface of the Yarnell claim at the workings 50 or 60 feet below the surface of the lowest point of the Cascaden claim, and below the surface of the bed rock there-

on. The evidence further shows that Yarnell's claim is worked by hoisting from shafts, which carries the pay streak that much below his surface, and also below the surface of the other paying mines in the vicinity. The alleged theory, surmise, supposition, or belief of the plaintiffs that such pay streak extended into the Cascaden claim was thus conclusively overthrown by the admitted proofs establishing the altitude of its country bed rock, and its rapid rise from the front of the claim toward the hill behind it. The court ought not to allow a false issue on surmises and theories to be built up to mislead the jury against admitted facts which certainly establish the falsity and misleading character of that issue; and for this reason, also, I am satisfied that the evidence was correctly excluded. , An issue ought not to be tried where it would be a sure mistrial and a mere waste of time. The court ought sua sponte to strike it out or disregard it. Barnet v. Bank, 98 U. S. 555, 25 L. Ed. 212.

Then, too, the defendant cannot be presumed to be prepared to meet such theories, surmises, and beliefs, as they are not clearly within the issues tendered by the pleadings. The opportunity thereby offered for fraud and perjury, which often cannot be met without a continuance, has been made apparent to the court in this as well as in other cases recently tried, where similar theories have been advanced to take the place of the simple issue tendered by the pleadings and contemplated by the statute. To admit the creation of such false issues is an invitation to doubt, uncertainty, fraud, and perjury in the necessary issues to be tried by the jury. The constant effort of counsel in this case to put theory forward, and keep the real issue in the background, is of itself evidence that he relied more upon the theory to mislead the jury than upon the actual facts to instruct and convince them.

The court submitted the question of discovery to the jury upon what it judged to be the true issue in the case, and ex-

cluded that theory and the evidence in support of it, which must have falsely misled them if they gave it any consideration. Evidently the jury believed the plaintiffs' testimony in support of his discovery to be false, and, as the court certainly did, the 13 cents found in the 8-foot shaft a "salted" or fraudulent prospect placed there by some one interested for the plaintiffs. If the jury believed that part of plaintiffs' testimony to be false, they were justified in distrusting other parts. Section 673, subd. 3, Code of Civil Procedure. As judges of the weight and credibility of the evidence, the jury must have believed that the plaintiff Cascaden did not make an actual and a sufficient discovery of gold within the limits of the claim, and the court agrees with that conclusion.

The motion for a new trial is denied, and an exception allowed.