## MOWER v. FLETCHER.

## SAME v. SAME & Another.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Argued December 17, 18, 1885.—Decided January 4, 1886.

If the proper officers of the United States approve a selection of school lands in disputed territory in California, outside the limits of an unsettled survey by the United States of a private claim, and issue proper certified lists,

and a purchaser under the title thus acquired by the State enters into possession, improves, and holds the land, no one, by forcibly or surreptitiously getting into possession can make a preëmption settlement which will defeat his title.

The nature of these two actions and the facts which make the issue are stated in the opinion of the court.

*Mr. W. J. Johnston* and *Mr. U. J. Baxter* for plaintiff in error.

*Mr. M. D. Brainard* and *Mr. James K. Redington* for defendants in error.

Mr. Chief Justice Waite delivered the opinion of the court.

The Federal question in each of these cases is the same, and it arises on the following facts: By the act of March 3, 1853, 10 Stat. 244, ch. 145, " to provide for the survey of the public lands in California, the granting of Preëmption Rights therein, and for other purposes," sections 16 and 36 of the public lands in each township, surveyed or unsurveyed, were granted to the State "for the purposes of public schools." By § 7 it was provided that if section 16 or section 36 in any township should be taken by a private claim other lands might be selected in lieu by the proper authorities of the State. A plat of the survey of township 2 south, range 13 west, San Bernardino meridian, was filed in the United States land office at San Francisco, April 22, 1868, and on the same day the State's locating agent selected S. ½ N. W. ¼ and N. ½ S. W. ¼, sec. 32, in that township, in lieu of S. E. ¼ sec. 36, T. 4 S., R. 4 W., same meridian, " claimed to be within a Mexican or Spanish grant." In the case to which Fletcher alone is defendant in error it is found as a fact, " that at the time of making said application and selection the S. E. ¼ of sec. 36 . . . was and has been ever since and is now in place, and is the property of the State of California, and has never been under the claim of any confirmed and finally surveyed Mexican or Spanish grant." In the other case there is no finding on this subject, but it is found " that at the time of said selection and location the owners of the Rancho

Sausal Redondo claimed that said [selected] lands were within the limits of said Rancho." According to the findings in the last case the dispute between the United States and the claimants of the Rancho seems to have continued until about March 22, 1875, when a survey was finally approved that excluded the selected lands from the grant, and a patent was issued according to this survey. The lieu selection as made by the agent was duly certified by the Commissioner of the General Land Office and the Secretary of the Interior to the State, November 23, 1871, and the land selected was patented by the State to Elmore W. Squiers, October 20, 1875, who had bought from the State a long time before. The title thus acquired by Squiers afterwards passed to the defendant in error Fletcher, who, on the 20th December, 1875, entered into a contract with Mower, the plaintiff in error, for the sale of the W. ½ of the S. W. ¼ of the N. W. ¼, twenty acres, for $1,000, of which $500 was paid in hand, and for the balance Mower gave his note payable eighteen months after date, with interest at the rate of one per cent. per month, taking back from Fletcher an agreement for a conveyance of the land on payment of the note. Under this contract Mower took possession of the land he bought, and on the 12th of March, 1876, made and filed with the register of the proper land office a declaratory statement of his intention to claim under the preëmption laws the whole of the S. ½ N. W. ¼ and N. ½ S. W. ¼ of the section including the twenty acres he had bought from Fletcher. On the 12th of December, 1876, he tendered to the register and receiver of the proper land office proof of his settlement, improvements and general compliance with the requirements of the preëmption laws, and also tendered the price and all legal fees and commissions, and requested to be allowed to enter the lands as a preëmptioner. This was refused by the register and receiver, and he thereupon appealed to the Commissioner of the General Land Office, where the case is now pending undetermined. Mower moved upon the lands outside of the twenty acres in January, 1877. In doing so he took possession of a dwelling-house erected by Squiers. The lands had all been enclosed, and at the time Mower moved on to them the north eighty acres were enclosed on three sides,

and there were upon the tract a bearing orchard of about fifteen hundred trees, fifteen years old, and a dwelling-house, corrals and out-houses, all put there by Squiers.

On the first of March, 1877, Congress passed an act "relating to indemnity school selections in the State of California," 19 Stat. 267, ch. 81. Section 2 of that act is as follows:

"SEC. 2. That where indemnity school selections have been made and certified to said State, and said selection shall fail by reason of the land, in lieu of which they were taken, not being included within such final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed, and the sixteenth and thirty-sixth section, in lieu of which the selection was made, shall, upon being excluded from such final survey, be disposed of as other public lands of the United States: *Provided*, that if there be no such sixteenth and thirty-sixth section, and the land certified therefor shall be held by an innocent purchaser for a valuable consideration, such purchaser shall be allowed to prove such facts before the proper land office, and shall be allowed to purchase the same at one dollar and twenty-five cents per acre, not to exceed three hundred and twenty acres for any one person : *Provided*, that if such person shall neglect or refuse, after knowledge of such facts, to furnish such proof and make payment for such land, it shall be subject to the general land laws of the United States."

Section 3 declares that the confirmation shall not extend to lands settled upon under the homestead or preëmption laws, "provided that such settlement was made in good faith upon lands not occupied by the settlement or improvement of any other person, and prior to the date of certification of said lands to the State of California by the Department of the Interior."

Mower having neglected to pay his note when it fell due, Fletcher, on the 2d of August, 1877, after tendering a deed for the land, brought suit for the recovery of the money. Mower answered, setting up a failure of title to the land, and, therefore, a want of consideration for the note. The Supreme Court held that Fletcher had good title, and gave judgment for the amount of the note and interest. To reverse that judg-

ment the writ of error in the suit of *Mower* v. *Fletcher* was brought.

. On the 24th of April, 1879, Fletcher and Bicknell, who held title under the patent to Squiers, brought suit to recover possession and quiet their title to the part of the lands upon which Mower had entered, not included in the twenty acres sold by Fletcher to him. To this Mower set up his preëmption claim as a defence, and insisted that the title under the selection by the State was invalid. The Supreme Court decided that Mower acquired no right to the possession by his attempt at a preëmption settlement, and gave judgment accordingly. To reverse that judgment the writ of error in *Mower* v. *Fletcher & Bicknell* was brought.

All questions of mere irregularity in the selection of lieu lands by the State, and in the grant by the State to Squiers, were conclusively settled, so far as the parties to this suit are concerned, by the issue to the State of the lists, certified by the Commissioner of the Land Office and the Secretary of the Interior, and by the patent from the State to Squiers. *Frasher* v. *O'Connor*, 115 U. S. 102. By an act of August 3, 1854, 10 Stat. 346, ch. 201, it was provided that where a law granting lands to the States or Territories does not convey the fee simple title, "lists of such lands . . . certified by the Commissioner of the General Land Office, under the seal of said office, either as originals, or copies of the originals or records, shall be regarded as conveying the fee simple of all the lands embraced in such lists that are of the character contemplated by such act of Congress, and intended to be granted thereby; but where lands embraced in such lists are not of the character embraced by such acts of Congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim, or interest shall be conveyed thereby." This statute is now section 2449 of the Revised Statutes.

In the argument for the plaintiff in error it as contended that this S. E. ¼ of section 36 was not actually within the limits of any Mexican claim when the lieu selection was made, and that consequently the certified list conveyed no title.

It is found as a fact in the case of *Mower* v. *Fletcher* that when the selection was made the S. E. ¼ section 36, "was, and has been ever since, in place, and is the property of the State of California, and has never been under the claim of any confirmed and finally surveyed Mexican or Spanish grant." This is not inconsistent with the fact that when the selection was made the land was within the limits of an unconfirmed Mexican claim, the boundaries of which had not been fixed by a final survey. The finding that the S. E. ¼ of section 36 *is* the property of the State is not, under the circumstances, the equivalent of a finding that it *was* the undisputed property of the State when the lieu selection was made. Such being the case, we are at liberty to presume it was as represented within the claim of a Mexican grant when the selection was made and certified. As in the case of *Mower* v. *Fletcher & Bicknell* there is no finding on the subject, the same presumption arises there.

In *Frasher* v. *O'Connor* it was decided that the survey made in 1868 of the Sausal Rancho Redondo was sufficient to authorize the State to select, under its various grants, lands outside of the then surveyed boundaries, subject, of course, to a defeat of title if in the end the survey as made should be set aside and the boundaries of the grant finally extended so as to include the selections. This was because by §8 of the act of July 23, 1866, 14 Stat. 220, ch. 229, it was provided that "all land not included in such grant as so set off shall be subject to the general laws of the United States." As the survey finally made fixed the boundaries so as to exclude the selected lands, the title of the State related back to the selection, and this enured to the benefit of Squiers under his patent from the State.

The question still remains, however, whether, if school selections are found in disputed territory outside the limits of an unsettled survey by the United States of a private claim, the State must wait until the boundaries are finally fixed before it can get its lieu lands. Without determining whether, if lieu lands are selected and certified under such circumstances, the United States can reassert title when it is finally ascertained that the school sections were not covered by the claim, we have no hesitation in saying that if the proper officers of the United

States approve such a selection and issue the proper certified lists, and a purchaser under such a title enters into the posses-sion of the land and improves, cultivates, and holds it, no one by forcibly or surreptitiously getting into possession can make a preëmption settlement which will defeat his title. *Atherton* v. *Fowler*, 96 U. S. 513, 519. As was said in that case, "The generosity by which Congress gave the settler the right of pre-ëmption was not intended to give him the benefit of another man's labor, and authorize him to turn that man or his family out of his home. It did not propose to give its bounty to set-tlements obtained by violence at the expense of others. The right to make a settlement was to be exercised on unsettled land; to make improvements on unimproved land. To erect a dwelling-house did not mean to seize some other man's dwelling."

This disposes of the claim of preëmption, and that being out of the way it is clear that the act of March 1, 1877, confirmed the State's title and made that of Fletcher good when the note of Mower to him fell due, and when he was bound to convey under his contract.

*The judgment in each of the cases is affirmed.*