Points decided.

[No. 1731.]

## A. D. NASH, ET AL., RESPONDENTS, *v.* DAN McNAMARA, ET AL., APPELLANTS.

1. COURTS—DECISIONS OF FEDERAL COURTS AS AUTHORITY. It is the special prerogative of the Federal Supreme Court to finally construe federal statues.

2. MINES AND MINERALS—LOCATION OF CLAIMS—ABANDONMENT. Under Comp. Laws, 208, and section 209 as amended by Stats. 1901, p. 97, c. 93, sec. 2, authorizing a discoverer to locate a mining claim and requiring the sinking of a discovery shaft on a claim before the expiration of ninety days from the posting of a notice of location, and Rev. Stats. U. S., secs. 2319, 2322, 2324 [U. S. Comp. Stats. 1901, 1424–1426], providing that locators of mining claims complying with the laws shall have the exclusive right of possession and enjoyment of all the surface included within their lines of location, and of all veins, etc., and that the location must be distinctly marked on the ground, so that its boundaries can be readily traced, and that until a patent has been issued not less than a specified amount of work shall be performed during each year, or the claim shall be open to relocation, etc., a junior location made on ground covered by a valid existing senior location will not prevail over a relocation on the same ground, made after a failure to do the work on the senior location, notwithstanding Rev. Stats. U. S., sec. 2326 [U. S. Comp. Stats. 1901, 1430], under which a claimant, by failure to assert his rights acquired, may lose them.

3. CONSTITUTIONAL LAW—STATUTES—VALIDITY. Though it is the duty of courts to construe laws, they should be careful not to encroach on the legislative department, or set aside statutes, federal or state, except where they are clearly in conflict with the Constitution.

4. MINES AND MINERALS—LOCATION OF CLAIMS. Where mining claims were located on a designated date, by posting the requisite notice and by the proper marking of their boundaries within ninety days thereafter, the right to the ground covered by them related back to the time of the posting of the notice and segregated the land from the public domain, so that a subsequent location was invalid until after there had been a failure to do the work required by the statutes to be done within ninety days from the posting of the notice; but where the notices were posted and the claims were not staked within ninety days thereafter, the locations were not completed, and they were not segregated from the public domain, though such posting carried the right to define the boundaries within ninety days.

5. SAME. Where a senior location of mining claims was not a valid and existing location at the time of a junior location, the junior locator became entitled to hold the claims for ninety days, and, by instituting his suit to recover the claims before the expiration of ninety days, he could recover judgment for possession and damages to the end of that period, and, if he should fail to do the required work within ninety days, the claims would become subject to relocation by others.

6. WITNESSES—CROSS-EXAMINATION—LIMIT OF RIGHT. The rule that the cross-examination of witnesses is limited to the matters brought out

on direct examination does not prevent the cross-examining party from making the witnesses his own after the adverse party has closed his case in chief, and does not prevent the court from allowing, in its discretion, a rigid examination of the witnesses where they are hostile.

APPEAL from the District Court of the Third Judicial District of the State of Nevada, Nye County; *Peter Breen,* Judge.

Action by A. D. Nash, and others, against Dan McNamara, and others. From a judgment for plaintiffs, defendants appeal. **Reversed, and remanded for a new trial.**

The facts sufficiently appear in the opinion.

*Wm. Forman,* for Appellants:

I. The court erred in permitting the witness O'Brien to testify as to the contents of the alleged notice of location of Union No. 2. No proper foundation was laid for such testimony, the witness only stating that "he did not have the notice, did not have a copy, looked in the monument for it, but it had not been there for several months, and that he did not know where it was; that he remembered parts of its contents." To support a recovery upon or under a lost instrument, the evidence must be clear and satisfactory that the instrument once existed, and, though diligent search for it had been made, cannot be found, and as to its contents it must be proven in all substantial parts. (*Bailey* v. *Byrd,* 95 Va. 316; *Gillis* v. *Wilmington,* 108 N. C. 441; *Mariner* v. *Saunders,* 10 Ill. 113; Ency. Evidence, vol. 8, p. 359.) The mere absence of an instrument is not sufficient on the question of its loss, but, as already shown, a diligent and unsuccessful search for it must be made. (*Allerkamp* v. *Galligher,* 24 S. W. 372, *Hough* v. *Barton,* 20 Vt. 455; *McDonald* v. *Jackson,* 56 Iowa, 643.) And its contents must be proven in all its substantial parts. (*Nicholson* v. *Tarpy,* 89 Cal. 617; *Laster* v. *Blackwell,* 128 Ala. 143; *Perkins* v. *Cushman,* 44 Me. 484.)

II. We have herein set forth such brief statements of the facts as are necessary to explain the points made. The ruling of the court that the defendants could not show that the Union claims were invalid, because located on prior valid

and subsisting locations, was contrary to the ruling of every court that has passed upon the matter, save in one instance, so far as we are able to ascertain, and in that one instance the facts and the law as there declared have no application in governing the law as to the case at bar, as we will show later on. As early as the year 1881 the Supreme Court of the United States decided this question against the contention made by respondents in the case at bar and against the ruling of the trial court as made in the present case. The Supreme Court of the United States then said: "Mining locations are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of the mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress, but it can only be exercised within the limits prescribed by the grant. Locations can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence, a relocation on lands actually covered by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done. It allows that the relocation of Belk was invalid at the time it was made and continued to be so until January 1, 1877."

III. The law thus established by the Supreme Court of the United States is the law which has always been in force in all tribunals where the question arose, save in one instance. Our own supreme court, in the case of *Rose* v. *Richmond Mining Co.*, 17 Nev. 56, 57, affirms the doctrine announced in *Belk* v. *Meagher*, and in addition uses the following language: "If, at the time the St. George location was made, there was a prior, existing, and valid location upon this portion of the lode, and such location has ever since been legally maintained, then the subsequent location of the St. George upon this portion of the lode was absolutely null and void, and respondent did not and could not acquire any rights whatever by virtue of its location upon, or its posses-

sion of, this portion of said lode.  A party cannot locate a valid claim or lode already located and legally possessed by another."

IV.   The decision and judgment and decree of the court are not supported by the evidence, and are contrary to the evidence.   It was shown by a fair preponderance of the evidence that at the time plaintiffs on the 24th and 25th of July, 1905, made their alleged discovery and location of the Union No. 2, Union No. 3, Union No. 4, and Union No. 5, that the same was upon appropriated mineral lands of the United States, and not subject to location by the plaintiffs, and no attempt was made by the plaintiffs to show. that, at the time they made their alleged locations of said claims, the same was on unappropriated public mineral lands of the United States, and subject to location.   It was shown by a fair preponderance of the evidence that at the time the plaintiffs made their alleged locations, to wit, on July 24 and 25, 1905, of the Union No. 2, Union No. 3, Union No. 4, and Union No. 5, the ground upon which said alleged locations were made was already appropriated, and was ground upon which there were prior, valid, and subsisting locations, to wit, the Portland No. 1 and Portland No. 2.   The evidence shows, without conflict, that the alleged locations of the Union claims, to wit, Union No. 2, Union No. 3, Union No. 4, and Union No. 5, were not made upon the public lands of the United States, which were open to location and appropriation on said dates. The decision and judgment are not supported by the evidence, in this, that the court finds that the premises embraced within said four claims, to wit, the Union No. 2, Union No. 3, Union No. 4, and Union No. 5 lode mining claims were, upon their respective dates of location, unappropriated, unoccupied public mineral domain of the United States, open to exploration, location, and purchase, whereas, no evidence whatsoever was introduced upon the trial to show this fact, and evidence offered by defendants on the trial to prove that such was not the fact was excluded by the court.   The judgment and decree and findings of the court are not supported by the evidence, in this, that the court finds that before the expiration of ninety days from the posting of the notice of location on each of said

respective four claims, to wit, the Union No. 2, Union No. 3, Union No. 4, and Union No. 5, the locators performed the requisite discovery work upon each of said four claims, whereas, at the trial certain evidence was offered to show that an attempt had been made by the plaintiffs to do and perform the requisite discovery work, and the same was introduced at the instance and on behalf of the plaintiffs, and afterwards all evidence as to any such work was, at the request of plaintiffs, and over the objection of defendants, withdrawn and not considered by the court. Said decision, findings of fact, and conclusions of law are not supported by the evidence, and are contrary to the evidence, in this, that the court found that before the expiration of ninety days from the posting of the notice of location on each of the said four claims, to wit, the Union No. 2, Union No. 3, Union No. 4, and Union No. 5, the locators recorded with the mining district recorder of the Manhattan Mining District and with the county recorder of Nye County a location certificate for each of the respective claims, containing the name of the claim, the names of the locators, the date of the location, with such description thereof with reference to some natural object or permanent monument as identified the claims; the number of linear feet in length claimed along the course of the lode each way from the point of discovery, with the width on each side from the center of the lode, and the general course thereof; the dimensions and location of the discovery work; the location and description of each corner and the markings thereon, when in truth and in fact the evidence offered in behalf of the plaintiff in support of such alleged acts was by the plaintiffs, over the objection of defendants, withdrawn from the consideration of the court.

V. The trial court should have found all the issues in favor of appellants and given judgment accordingly, and; failing in this, should have granted defendants a new trial, but, inasmuch as all the evidence is before this court, this court should reverse the judgment in favor of appellants in accordance with relief demanded in their amended answer to the complaint of the individual respondents, and in accordance with the relief demanded in their answer to the com-

plaint of the corporation defendants. The respondent showed no right whatever to the ground in controversy. The evidence clearly shows that they are strangers to the title; that their attempted location of the Union claims was fraudulent and void; and that they were speculative and were not made in good faith, and that they, by their alleged locations, seek to deprive appellants of their locations, which are valid and made in good faith, as shown by their every act and deed in promoting the development of the mineral resources of the state.

*Campbell, Metson & Brown, George A. Bartlett,* and *Key Pittman*, for Respondents:                    •

I. Proof is necessary to establish foundation for introduction of oral testimony as to contents of a written instrument. Greenleaf says: "It should be recollected that the object of the proof is merely to establish a reasonable presumption of the loss of the instrument; and that this is a preliminary inquiry addressed to the discretion of the judge." (1 Greenl. Ev. 558.) Wigmore says: "There is not and cannot be any universal or fixed rule to test the sufficiency of the search for a document alleged to be lost. The inquiry must depend entirely on the circumstances of the case." (2 Wigmore, Ev. 1194, and citations thereunder.) In *Brewster* v. *Sewell*, 3 B. & Ald. 296, Abbott, C. J., says:. "All evidence is to be considered with regard to the matter with respect to which it is produced. Now it appears to be a very different thing whether the subject of the inquiry be a useless paper which may reasonably be supposed to be lost, or whether it is an important document which the party might have an interest in keeping and for the nonproduction of which no satisfactory reason is assigned. This being the case, therefore, where the loss or destruction of the paper may almost be presumed, very slight evidence of its loss or destruction is sufficient." (Cited in 2 Wigmore, Ev. 1194.)

II. Such a paper was the location notice. It is only required to be placed in a stone monument on the mining claim. No copy need be made or recorded. The locator is

under no obligation to keep it posted. At the end of ninety days the facts required to be stated in the notice are perpetuated by recording a certificate of location. In *Clark* v. *Hornbeck*, 17 N. J. Eq. 450, 451, the subject is discussed exhaustively, with many citations from the highest authorities. The court lays down the rule in the following language: "All that the law requires as a ground for the admission of secondary evidence is a reasonable assurance that evidence of a higher nature is not withheld or suppressed by the party offering it. * * * As a general rule, it is clear the legal presumption will be that the paper is lost." Even testimony of an attorney in an action, of a search for his client's lost instrument, is sufficient, if there does not appear to be any ground for supposing that the instrument was designedly withheld. (*Minor* v. *Tillotson*, 7 Pet. 99.) It is sufficient if the search is made where the paper or instrument was last known to be, or where it is most likely to be found. (25 Am. & Eng. Ency. Law, 167.)

III. All mineral lands, at least in the State of Nevada, belong to the United States, and are part of the public domain until title is parted with as provided by acts of Congress for the sale of mineral lands. This can only be accomplished by the issuance of a receipt by the receiver of the United States Land Office for the purchase price of a mining claim in a patent proceeding. All lands that were originally owned by the sovereign are presumed to be owned by the sovereign until a conveyance is proven. Respondents admit that it was competent for appellants to prove that the land was not mineral land of the United States at the time respondents' said locations were made, but insist that, unless said proof is made by appellants, the presumption continues that it is mineral land of the United States, a discovery having been proven. (*Belk* v. *Meagher*, 104 U. S. 279; *Gwillim* v. *Donnellan*, 115 U. S. 45; *Lavagnino* v. *Uhlig*, 198 U. S. 443; *Brown* v. *Gurney*, 201 U. S. 184.)

IV. This brings us down to a discussion of alleged error No. 16. Said error is based on the grounds of the exclusion of the evidence by the court as to the location of said Portland mining claims, and really raises the only material issue

of appeal. It is admitted that the facts of the case at bar are identical with the facts as presented to the Supreme Court of the United States in the celebrated case of *Lavagnino* v. *Uhlig*. Appellants attempted to prove that said Portland mining claims were located on July 1, 1905, and abandoned by said locators between the 25th day of July, 1905, and the 29th day of September, 1905; that, at the time respondents' said Union mining claims were located, they were located on ground covered by said Portland mining claims, and at said time said Portland mining claims had not been abandoned. The Portland mining locations bear the same relation to the Union mining claims and the Liberty and Justice mining claims, as the Levi P. and Veta mining claims bore to the Uhlig mining claims and the Yes You Do. The decision of the case at bar in the trial court depended entirely upon the construction to be given to *Lavagnino* v. *Uhlig*, and now the sustaining or reversal of said decision in this court depends entirely upon the construction given to *Lavagnino* v. *Uhlig*. A correct understanding of the language that led to the establishment of the law in *Lavagnino* v. *Uhlig* requires consideration of the following subjects:

. (1) *What land is open to location for mining purposes?* Section 2319, Revised Statutes of the United States, corresponding to section 1 of the act of 1872, reads as follows: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase by citizens of the United States and those who have declared their intention to become such, under the regulations required by law, and according to the local customs or rules of miners in the several mining districts so far as the same are applicable and not inconsistent with the laws of the United States." It will be observed that there is no such language used as "unoccupied" or "unappropriated public domain." The only qualification necessary under the statute is that it is mineral land belonging to the United States. The terms "unoccupied" and "unappropriated" are expressions originated by courts in contests between senior and

junior locators of the same ground, involving the right of possession. .

(2) *What are "mineral lands of the United States"?* Justice Brewer, in *Del Monte M. Co.* v. *Last Chance M. Co.,* 171 U. S. 59, 60, says: "In the acquisition of foreign territory since the establishment of this government the great body of land acquired became the property of the United States, and is known as the 'public lands.' By virtue of this ownership of the soil the title to all mines and minerals beneath the surface was also vested in the government." In *Heydenfeldt* v. *Daney Gold and Silver M. Co.,* 10 Nev. 290, it has been held that all mineral lands in the State of Nevada belong to the United States, and have been expressly reserved from any grant of land to the state.

(3) *When does such land cease to be mineral land of the United States?* In *Del Monte M. Co.* v. *Last Chance M. Co., supra,* the court says: "By section 2319, quoted above, the mineral deposits which are declared to be open to exploration and purchase are those found in lands belonging to the United States, and such lands are the only ones open to occupation and purchase. While this is true, it is also true that until the legal title has passed, the public lands are within the jurisdiction of the land department."

(4) *What is the location of a mining claim, and what rights are derived therefrom by the locator?* Justice Brewer, in delivering the opinion of the court in *Del Monte M. Co.* v. *Last Chance M. Co., supra,* says: "It must be borne in mind that the location is the initial step taken by the locator to indicate the place and extent of the surface which he desires to acquire. It is a means of giving notice. That which is located is called in section 2320 and elsewhere a 'claim' or a 'mining claim.' Indeed, the words 'claim' and 'location' are used interchangeably. This location does not come at the end of the proceedings to define that which has been acquired after all contests have been adjudicated. The location—the mere making of a claim—works no injury to one who has acquired prior rights."

(5) *How is land affected by location, so far as subsequent locators are concerned?* A location of a mining claim having

been determined to be only a claim of possession or an assertion of a right of possession, no prior location can in any manner bar a subsequent claim or assertion of right from possession.   Of course, the locator who has first claimed possession, or asserted a right of possession, to the mineral land, until he forfeits or abandons the same is entitled to maintain such possession as against a subsequent locator, and to maintain suits for such purpose.   As a senior locator, however, acquires only a right of possession by virtue of his location and no interest in the legal title to the property, his forfeiture or abandonment of such right places him in a position where he cannot contest the subsequent assertion of the right of possession made by the subsequent locator.   If the senior locator cannot assert his right on account of his forfeiture or abandonment, then certainly no third party can assert such right.   As is said by Justice Brewer in *Del Monte* v. *Last Chance, supra:* "Some confusion may arise when locations overlap each other and include the same ground, for then the right of possession becomes a matter of dispute. But no location creates a right superior to any previous valid locations, and these possessory rights have always been recognized and disputes concerning them settled in courts."

V.   Appellants claim that the law established in the case of *Lavagnino* v. *Uhlig* is not applicable by reason of section 213 of the Compiled Laws of Nevada, in relation to filing amended and additional certificates of location.   This act, in the first place, is only directory, using the word "may" instead of "shall"; and again it states that such amended and additional certificate shall not "preclude the claimant or claimants from proving any such titles as he or they may have held under previous location."   This law was evidently passed for the purpose of allowing a locator to take in subsequently other ground than that which was originally included in his location.   There was no necessity for any amended and additional certificate of location in the case of Union mining claims (as the location notices took in full twenty acres for each claim), and, even if the Portland mining claims had in any way interfered, they were abandoned before the expiration of ninety days from the location of the Union

mining claims, and the locators of the Union mining claims were not required to establish their boundaries prior to the date of abandonment of said Portland claims. The object of the certificate of location is only to provide *prima facie* evidence of its contents, and the provision for amending it is solely for the purpose of allowing the locator to change his boundaries at any time without going to the formality of making a new location. The act in no way affected the rights of the locator so far as the initial steps of his location are concerned. We cannot see that the act in any way affects the law as established in *Lavagnino* v. *Uhlig*. The question, however, is disposed of by reason of the fact that respondents did offer to prove that, subsequent to the admitted abandonment of the Portland mining claims and prior to the expiration of the ninety days after the location of the Union mining claims, respondents did file for record certificates of location in accordance with the directions of said section and embracing all the land located as said Union mining claim; and that such proof was objected to by appellants as immaterial and incompetent, and the objection was sustained by the court.

*Wm. Forman*, for Appellants, in reply:

I.   Appellants admit the lands in controversy are mineral lands, and admit that, prior to July 1, 1905, these lands were mineral lands of the United States, but appellants do say that when Kopenhaver, Meissner, and Lawson made a discovery of mineral, and located, on said ledge in which the mineral was discovered, two claims, known as the Portland No. 1 and Portland No. 2, the land within these two locations was segregated from the public domain, and that after being so withdrawn no one could go upon these lands and initiate any right to the land so appropriated until after the land reverted to the public domain by reason of the abandonment or forfeiture of the Portland claims. Appellants made their locations of the Liberty and Justice claims after the abandonment of the Portland claims and before there were any intervening rights. After appellants had made their locations as relocations of the Portland claims, and

after the institution of this action, it seems that respondents recognized that the case of *Lavagnino* v. *Uhlig*, upon which they relied in the lower court and now rely in support of the validity of the Union claims, did not apply in view of section 213 of the Compiled Laws of the State of Nevada, for on page 63 of respondents' brief they made the following assertion: "We cannot see that the act in any way affects the law as established in *Lavagnino* v. *Uhlig*. The question, however, is disposed of by reason of the fact that respondents did offer to prove that, subsequent to the admitted abandonment of the Portland mining claims and prior to the expiration of the ninety days after the location of the Union mining claims, respondents did file for record certificates of location in accordance with the directions of said section and embracing all the land located as said Union mining claims; and that such proof was objected to by appellants as immaterial and incompetent, and the objection was sustained by the court." Why was such proof objected to by appellants? Because it was inadmissible under the pleadings, and because said section 213 states: "Providing that such relocation does not interfere with the existing rights of others at the time of such relocation." After the Portland claims were abandoned the Liberty and Justice claims were located, and this, too, before there were any existing rights of others. When respondents filed their additional and amended certificates, and when respondents did their additional work (the testimony in relation to which was voluntarily withdrawn), was after appellants had acquired title to the ground in controversy and was after the institution of this suit. The rights, if any, of respondents to the premises in controversy, having terminated during the pendency of the action for failure of performance of the discovery location work, the judgment should be reversed with directions to the lower court to enter judgment for appellants according to the demand of their answer.

II. Counsel for respondents cite with seeming satisfaction *Creede C. C. M. & M. Co.* v. *Uinta T. M. & T. Co.*, 196 U. S. 338, 340, commonly known as the Uinta Tunnel case, as if the same were controlling this case. That case does not

uphold the contentions which respondents attempt to maintain, for in that case the court said: "The express grant to the locators made by this section includes only the surface and the veins apexing within the boundaries of the location." Precisely what we contended for—that the locator, by virtue of his location, receives an express grant of the surface and all veins having a top or apex within the exterior boundaries of his claim. Counsel quotes an excerpt from the opinion as follows: "Until, therefore, by entry and payment to the government the title to the ground passes to the locator, he is in no position to question any rights of exploration which are granted by other provisions of the statute."

III. Counsel for respondents says that the provisions of section 213, of the Compiled Laws of Nevada are only directory. Respondents, however, by their acts, treated it as mandatory, for they say "that respondents did offer to prove that, subsequent to the admitted abandonment of the Portland mining claims," respondents did file additional certificates of location. But respondents failed to state that appellants located the Justice and Liberty claims as relocations of the Portland claim after the "admitted abandonment" of the Portland claim, and this, too, before the institution of this action, and before respondents attempted to comply with the provisions of section 213, *supra*.

By the Court, TALBOT, C. J.:

The respondents, who were plaintiffs in the district court, brought this action to recover certain claims called the "Unions," with designated numbers, situated in the Manhattan Mining District, and which had been located on the 24th and 25th days of July, 1905. It was also stated in the complaint that the defendants were breaking down and removing large quantities of ore from the premises, and the prayer was for the recovery of possession, for an injunction, and for $10,000 damages. The defendants, who are the appellants here, set up ownership and possession of the ground in themselves under the Liberty and Justice mining claims, located September 29, 1905. The contending parties alleged that the respective locations on which they relied had

been made on the unappropriated mineral lands of the United States. This allegation in the complaint was denied by the answer. Upon the trial, after evidence had been introduced regarding the location of these claims, the defendants offered to prove that on July 1, 1905, twenty-four days prior to the location of the Unions and ninety-one days before the location of the Liberty and Justice, three men, Kopenhaver, Meissner, and Lawson, had made valid locations on the unappropriated mineral lands of the United States of claims called the "Portlands," and numbered, and which covered the ground in dispute, and that these were valid, existing claims at the time the Unions, upon which respondents rely, were located. After argument and consideration the learned district judge sustained an objection to this offer, and, although he did not allow the defendants to prove that at the time the Union claims were located the ground was covered by prior and existing valid locations, he made a finding that the Unions were located upon the unappropriated public domain of the United States, and entered judgment in favor of respondents. Of the forty-two specifications of error, a number relate directly or indirectly to the rejection of this offer and to the making of this finding, and the controlling question involved is whether a junior location made upon ground covered by a valid existing senior location will prevail over one made after a failure to do the required work on the senior location, when the statute of limitations has not run in favor of either.

Upon the trial, and also upon the hearing in this court, respondents relied upon the case of *Lavagnino* v. *Uhlig*, 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, contending that the facts there are similar to those in the present case, and that the law applicable to them has been settled by the latest expression of the highest tribunal. It is admitted by counsel for appellants that the language in the decision in that case is in conflict with *Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735, and other decisions of that and other courts favorable to appellants; but it is claimed that it is overruled by a later decision of that court in *Brown* v. *Gurney*, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. Ed. 717. Recognizing that it is the special prerogative of the Supreme Court of the United States

to finally construe federal statutes, and that its opinions relating to other matters are entitled to special consideration as coming from the highest and ablest tribunal, it becomes important to examine and analyze the conflicting decisions of that court bearing on the issue before us, and to determine which are most in consonance with reason, justice, legal principles, and the statutes relating to the location of mining claims.

Congress, in the proper exercise of its control over the public domain, by act of May 10, 1872, c. 152, sec. 2 (section 2319 of the Revised Statutes [U. S. Comp. Stats. 1901, p. 1424]), provided "that all valuable mineral deposits in lands belonging to the United States are free and open to exploration, occupation and purchase by citizens and those who have declared their intention to become such, under regulations prescribed by law." Section 2322 [page 1425] provides that "the locators of all mining claims, so long as they comply with the laws of the United States and with state and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right and enjoyment of all the surface included within their lines of location and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically" within planes drawn through parallel end lines. Section 2324 [page 1426] provides that "the location must be distinctly marked on the ground so that its boundaries can be readily traced; * * * that on each claim located after the 10th day of May, 1872, and until a patent has been issued therefor, not less than one hundred dollars worth of work shall be performed or improvements made during each year; * * * and upon a failure to comply with these conditions the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location had ever been made; provided that the original locators, their heirs, assigns, or legal representatives have not resumed work upon the claim after failure and before such location."

Section 208 of the Compiled Laws of Nevada directs that any person, a citizen of the United States, or one who has

declared his intention to become such, who discovers a vein or lode, may locate a claim by defining the boundaries thereof in the manner prescribed and by posting at the point of discovery a notice containing the name of the lode or claim, the name of the locator or locators, the date of the location, the number of linear feet claimed in length along the course of the vein, with the width on each side of the center, and the general course of the vein or lode. Section 209, as amended by Stats. 1901, p. 97, c. 93, sec. 2, requires that before the expiration of ninety days from the posting of notice of location the locator shall sink a discovery shaft upon the claim of the depth of at least ten feet or its equivalent.

It is the contention of the appellants that the Portland locations, if made on the 1st day of July, as they offered to prove, withdrew the land from location for ninety days, during which time the respondents could initiate no rights upon it; that as the ten feet of work required by the state statute was not done upon these claims within ninety days after they were located, upon the expiration of that period they became, similarly as upon a failure to do the annual work required by the federal statute, subject to relocation by the appellants at the time they made their locations. As the language of the opinion in the Uhlig case stands opposed, not only to the law as established by *Belk* v. *Meagher* and as held by lawyers and miners for a quarter of a century, but to numerous decisions of the court, state and federal, in the mining states, and to others of the Supreme Court of the United States, it will be advantageous to consider the Belk case as the leading one, representative of numerous others, and compare the two.

The facts in both are similar to the one before the court, in that the contest here is between a claim alleged to have been located upon ground covered by a prior, valid, existing location, and a relocation made upon the same ground after the expiration of the time for doing the required work on the senior claim. In regard to the periods of time between the making of the locations of the contestants, the Belk case is more like the one before the court than *Lavagnino* v. *Uhlig.* In the Belk case it was conceded by both parties that the

original or senior claims lapsed on the 1st day of January, 1877, because of failure to perform the annual work. Belk made the location under which he claimed on the 19th day of December, 1876, and did all that was necessary to perfect his rights, if the premises were open to location at that time. His entry on the property was peaceful. On February 21, 1877, Meagher made his location, doing all that was necessary to perfect his rights, if the premises were then open to location. Here the difference in the respective dates of location of the contending claims is about seventy days, as in the Belk case. The two Uhligs, evidently at an expense of not less than $1,600 for the annual work, had been located and maintained for nine years previous to the location of the claims upon which Lavagnino relied. The statute of limitations applicable to such cases in Utah is seven years. In Nevada it is five years for real estate and two years for mining claims. (Comp. Laws, 3706.) This difference of time, amounting to nearly nine years, a period longer than the one specified in the statute, and seventy days, is sufficient to distinguish the Uhlig case from the present one, and also from the Belk case, which is more nearly in point. State statutes of limitation relating to mining claims are recognized by section 13 of the act of Congress of July 9, 1870. Properly Uhlig was given his claims by the Supreme Court of Utah, and that judgment was affirmed by the Supreme Court of the United States; but, should force be given to all the language used in that case by the highest tribunal, it conflicts with the Belk case and other cases.

The following extracts from the unanimous opinion of the court, written by the Chief Justice, in *Belk* v. *Meagher*, are appropriate: "Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress; but it can only be exercised within the limits prescribed by the grant. A location can

only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this, not only against the prior locator, but all the world, because the law allows no such thing to be done. It follows that the relocation of Belk was invalid. * * * The next inquiry is whether the attempted location in December became operative on the 1st of January, so as to give Belk the exclusive right to the possession and enjoyment of the claim after that. We think it did not. The right to possession comes only from a valid location. * * * A location is not made by taking possession alone, but by working on the ground, recording, and doing whatever else is required for that purpose by the acts of Congress and the local laws and regulations. As in this case all these things were done when the law did not allow it, they are as if they had never been done. On the 19th of December the right to the possession of this property was just as much withdrawn from the public domain as the fee is by a valid grant from the United States under the authority of law, or the possession by a valid and subsisting homestead or preëmption entry. As the United States could not at the time give Belk the right to take possession of the property for the purpose of making his location, because there was an existing outstanding grant of the exclusive right of possession and enjoyment, it would seem necessarily to follow that any tortious entry he might make must be unavailing for the purposes of a valid location of a claim under the act of Congress. A location, to be effectual, must be good at the time it is made. When perfected, it has the effect of a grant by the United States of the right of present and exclusive possession. * * * Here Congress has said in unmistakable language that what has been once located under the law shall not be relocated until the first location has expired."

In the Uhlig case, which was by a divided court, no intention of overruling any conflicting decision is expressed; but, in referring to certain text-books, it was said: "Statements are found which seemingly indicate that in the opinion of

the writers, on the forfeiture of a senior mining location, *quoad* a junior and conflicting location, the area of conflict becomes in an unqualified sense unoccupied mineral lands of the United States without inuring in any way to the benefit of the junior location.   But in the treatises referred to no account is taken of the effect of the express provisions of Rev. Stats. sec. 2326 [U. S. Comp. Stats. 1901, p. 1430]. Moreover, when the cases to which the text-writers referred as sustaining the statements made are examined, it will be seen that they were decided either before the passage of the adverse claim statutes of 1872, or concerned controversies between the senior and junior locators, or depended upon the provisions of state statutes." As *Belk* v. *Meagher* does not come within any of these classes, it may be inferred that by inadvertence the writer of the opinion did not have that case in mind and that the court did not intentionally overrule the principles laid down in that and followed in other cases.

This inference finds further support in the language of that tribunal in *Mining Co.* v. *Tunnel Co.*, 196 U. S. 342-3, 25 Sup. Ct. 266, 49 L. Ed. 501, submitted at the same term, in *Brown* v. *Gurney*, 201 U. S. 191, 26 Sup. Ct. 509, 50 L. Ed. 717, determined a year later, and in *Clipper Mining Co.* v. *Eli Mining Co.*, 194 U. S. 226, 24 Sup. Ct. 634, 48 L. Ed. 944, decided one year previously, in which the court said: "It will be seen that section 2322, Rev. Stats. [U. S. Comp. Stats. 1901, p. 1425], gives to the owner of a valid lode location the exclusive right of possession and enjoyment of all the surface included within the lines of the location.   That exclusive right of possession forbids any trespass.   No one without his consent, or at least his acquiescence, can rightfully enter upon the premises or disturb its surface by sinking shafts or otherwise.   It was the judgment of Congress that, in order to secure the fullest working of the mines and the complete development of the mineral property, the owner thereof should have the undisturbed possession of not less than a specified amount of surface.   That exclusive right of possession is as much the property of the locator as the vein or lode by him discovered and located.   In *Belk* v.

*Meagher*, 104 U. S. 279, 283, 26 L. Ed. 735, it was said by Chief Justice Waite that 'a mining claim perfected under the law is property in the highest sense of that term'; and in a later case (*Gwillim* v. *Donnellan*, 115 U. S. 45, 49, 5 Sup. Ct. 1112, 29 L. Ed. 348) he adds: 'A valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located. If, when one enters on land to make a location, there is another location in full force which entitles its owner to the exclusive possession of the land, the first location operates as a bar to the second.'

"In *St. Louis Mining Co.* v. *Montana Mining Co.*, 171 U. S. 650, 655, 19 Sup. Ct. 63, 43 L. Ed. 320, the present Chief Justice declared that, 'Where there is a valid location of a mining claim, the area becomes segregated from the public domain and the property of the locator.' Nor is this 'exclusive right of possession and enjoyment' limited to the surface, nor even to the single vein whose discovery antedates and is the basis of the location. It extends (so reads the section) to 'all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically.' In other words, the entire body of ground, together with all veins and lodes whose apexes are within that body of ground, become subject to an exclusive right of possession and enjoyment by the locator. And this exclusive right of possession and enjoyment continues during the entire life of the location, or, in the words of Chief Justice Waite, just quoted, while there is a 'valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States.' There is no provision for, no suggestion of, a prior termination thereof.   *   *   * And, if the surface is open to the entry of whoever seeks to explore for veins, his possession can be entirely destroyed. In this connection it may be well to notice the last sentence in section 2322,   *   *   * which is a limitation on such right, and reads: 'And nothing in this section shall

authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another.' * * * The difficulty with the case presented by the plaintiff in error is that under the findings of fact we must take it that the entries of the locators of these several lode claims upon the placer grounds were trespassers, and as a general rule no one can initiate a right by means of a trespass. (*Atherton* v. *Fowler*, 96 U. S. 513, 24 L. Ed. 732; *Trenouth* v. *San Francisco*, 100 U. S. 251, 25 L. Ed. 626; *Haws* v. *Victoria Copper Mining Company*, 160 U. S. 303, 16 Sup. Ct. 282, 40 L. Ed. 436.) See, also, *Cosmos Exploration Company* v. *Gray Eagle Company*, 112 Fed. 4, 17, 50 C. C. A. 79, 93, 61 L. R. A. 230, in which the court said: 'No right can be initiated on government land which is in the actual possession of another by a forcible, fraudulent, or clandestine entry thereon. (*Cowell* v. *Lammers* [C. C.] 21 Fed. 200, 202; *Nevada Sierra Oil Co.* v. *Home Oil Co.* [C. C.] 98 Fed. 674, 680; *Hosmer* v. *Wallace*, 97 U. S. 575, 579, 24 L. Ed. 1130; *Trenouth* v. *San Francisco*, 100 U. S. 251, 25 L. Ed. 626; *Mower* v. *Fletcher*, 116 U. S. 380, 385, 386, 6 Sup. Ct. 409, 29 L. Ed. 593; *Haws* v. *Mining Company*, 160 U. S. 303, 317, 16 Sup. Ct. 282, 40 L. Ed. 436; *Nickals* v. *Winn*, 17 Nev. 188, 193; *McBrown* v. *Morris*, 59 Cal. 64, 72; *Goodwin* v. *McCabe*, 75 Cal. 584, 588, 17 Pac. 705; *Rourke* v. *McNally*, 98 Cal. 291, 33 Pac. 62.)'"

Cases supporting this legal principle, including *Brown* v. *Killabrew*, 21 Nev. 438, are cited in the decision of the District Court of Nye County rendered last year in *Ford* v. *Brown*.

The opinion in the Uhlig case quotes at length and relies upon section 2326 of the Revised Statutes, Act Cong. May 10, 1872, c. 152, sec. 7, 17 Stats. 93 [U. S. Comp. Stats. 1901, p. 1430]. This section relates to the procedure where an adverse claim is filed upon an application being made for patent. There is nothing in its language as to whether a second location, made before, may prevail over a third location, made after, failure to do the required work, and nothing is stated in regard to the time when claims become subject

to relocation, and it does not in any way designate how or
when the rights of parties by location or relocation may be
acquired, and consequently has no bearing upon the ques-
tion which was before the court, and lends no support to the
conclusion reached.   The part of this section upon which the
opinion seems to be based enacts that "it shall be the duty
of the adverse claimant within thirty days after filing his
claim to commence proceedings in a court of competent juris-
diction to determine the question of right of possession and
prosecute the same with reasonable diligence to final judgment
and a failure to do so shall be a waiver of his adverse claim."
This simply provides that by failure to assert them a claim-
ant may lose any rights which he has in the same way that a
defendant in any action may lose his by default and failure to
answer, and neither litigant in that case had made any such
default or failure.   It relates to how rights already obtained
may be defended, determined, preserved, and forfeited, but not
as to how those rights may be acquired by location or otherwise.
This was not passed later than the other sections of the
Revised Statutes mentioned, but at the same time as a part
of the same act of May 10, 1872.   As there is nothing in its
language relating to the time or method of locating claims,
we are unable to perceive how it can in any way amend,
modify, repeal, or affect the language in section 2322, pro-
viding "that the locators of all mining locations, so long as
they comply with the laws of the United States and with
state, territorial and local regulations not in conflict with the
laws of the United States governing their possessory title
*  *  *   shall have the exclusive right of possession and
enjoyment of all the surface included within the lines of
their locations and of all veins, lodes and ledges through-
out their entire depth, the top or apex of which lies inside
their surface lines extended downward vertically" and within
planes running through parallel end lines, or the language
in section 2324 that "the location must be distinctly marked
on the ground so that its boundaries can be readily traced;
that on each claim located after the 10th of May, 1872, and
until a patent has been issued therefor, not less than one
hundred dollars worth of labor shall be performed or improve-

ments made during each year;   *   *   *   and that upon the
failure to comply with these conditions the claim or mine
upon which such failure occurred shall be open to relocation
in the same manner as if no location of the same had ever
been made."

For the purpose of making the time uniform for doing the
annual work, and for the relocation of claims on which such
work is not performed, section 2324 was amended eight
years later by the act of January 22, 1880, c. 9, sec. 2, 21
Stats. 61 [U. S. Comp. Stats. 1901, p. 1426], so as to provide
that the period within which the work is required to be done
annually on all unpatented mining claims shall commence
on the 1st day of January succeeding the date of location.
In the Uhlig opinion the court said: "It cannot be denied
that under section 2326, if before abandonment or forfeiture
of the Levi P. claim, the owners of the Uhlig locations had
applied for a patent, and the owners of the Levi P. had not
adversed the application, upon an establishment of a *prima
facie* right in the owners of the Uhlig claims, an indisputable
presumption would have arisen that no conflict claims existed
to the premises described in the location notice. (*Gwillim* v.
*Donnellan*, 115 U. S. 45, 51, 5 Sup. Ct. 1110, 29 L. Ed. 348.)
And the same result would have arisen had the owner of the
Levi P. adversed the application for a patent based upon the
Uhlig locations and failed to prosecute and waived such
adverse claim.   In both of the supposed instances the neces-
sary consequence would have been to conclusively determine in
favor of the applicant, so far as the rights of third persons
were concerned, that the land was not unoccupied public land
of the United States, but, on the contrary, as to such persons,
from the time of the location by the applicant for the patent,
was land embraced within such location and not subject to be
acquired by another person.   And this result, flowing from the
failure of the owner of a subsisting senior location to adverse
an application for patent by the owner of an opposing loca-
tion, or his waiver if an adverse claim is made, must, as the
greater includes the lesser, also arise from the forfeiture of
the claim of the senior locator before an application for pat-
ent is made by the conflicting locator, and the consequent

impossibility of the senior locator to successfully adverse after the forfeiture is complete. Of course, the effect of the construction which we have thus given to section 2326 of the Revised Statutes [U. S. Comp. Stats. 1901, p. 1430] is to cause the provisions of that section to qualify sections 2319 and 2324 [pages 1424, 1430], thereby preventing mineral lands of the United States, which have been the subject of conflicting locations, from becoming, *quoad* the claims of third parties, unoccupied mineral lands by the mere forfeiture of one of such locations."

By this language it is correctly stated at the beginning that where there are two claimants, and one applies for patent, the other may lose his rights under section 2326 by failing to adverse. Under the peculiar and unusual circumstances, the result in the Uhlig case was correct, and could have been justified on another ground; but we are unable to perceive the force and correctness of the conclusion, on which the opinion was based, that because a claimant may waive his rights in proceedings for patent under section 2326, and because a senior locator may forfeit his, that therefore a mining claim is subject to relocation, or, what is the same thing, a junior or second location may be initiated on the ground as soon as the first location has been made, instead of upon the failure of the first locator to perform the required work as enacted by the statute. By a literal construction what is called a modification, we think, in effect would be a judicial repeal of a plain enactment, supported only by reference to another section which has no application. The language used is equivalent to saying that because a claimant may waive his right under section 2326 by failing to adverse, and a senior locator may forfeit his, therefore mining locations do not become subject to relocation upon the failure to do the required work as provided by section 2324, but that they may be relocated and rights initiated at any prior time.

The sections relating to proceedings upon application for patent are for the purpose of enabling claimants to obtain a final grant of the legal title from the government for ground previously acquired and to avoid any necessity of doing the

annual work. So long as one hundred dollars is expended each year upon the claim, as required by the act of Congress, the owner's right to exclusive possession and to extract and exhaust the ore is as complete as if he held a patent, for which he may never apply unless he desires. Not infrequently ore worth millions of dollars is taken from mines which are finally abandoned as worthless and no application to patent them is ever made. The right to obtain patent depends upon the making of a location or upon having held possession during the period of the statute of limitations; but the making of the location and the time for making it do not depend upon the section regulating the proceedings upon application for patent which the claimant may never institute.

Surely it will not be contended that Congress has not the power to regulate the disposition of the unappropriated public mineral lands. The statute having clearly provided that these are open to location by citizens of the United States and those who have declared their intention to become such, and that the locators of mining claims, upon complying with the laws, shall have the exclusive right of possession and enjoyment of the surface included within the lines of their locations, and that claims shall be subject to relocation upon the failure to do the required work, these provisions ought not to be nullified or repealed by the courts because there is another section providing that a claimant may waive his right by a failure to adverse when application has been made for a patent, or because a senior locator or others who are not parties to the litigation may forfeit their rights by failing to do the required work. It is the duty of courts to construe and interpret the laws; but they should be careful not to encroach upon the legislative department, or set aside statutes, federal or state, except when they are clearly in conflict with the Constitution. As the Uhlig case was one on adverse proceedings against an applicant for patent, the decision being based on the statute regulating these, anything the court said regarding the rights or forfeiture of an applicant in such proceedings may be considered as dictum in the present case, which is not on such proceedings. To enforce all the statements in that opinion in cases generally,

like the one at bar, would necessitate the setting aside of the provisions in other sections of the act of May 10, 1872, to which reference has been made, and which were plainly followed and enforced by the Belk case and other cases. The senior locator in the Uhlig case waived his interests by failing to appear, and was not in court or trying to assert them, and anything said regarding the forfeiture of his rights was incidental.

If the plain provisions of the statute are to be overthrown, after having been enforced by numerous courts and universally accepted for a generation, not only will vested rights be endangered, but, as said in that case: "To hold that, before the former location has expired, an entry may be made and the several acts done necessary to perfect a relocation will be to encourage unseemly contests about the possession of the public mineral-bearing lands, which would almost necessarily be followed by breaches of the peace." Then, instead of claims becoming subject to relocation upon the 1st day of January and after failure to do the annual assessment, the ground might be relocated before there was any such failure, and a day, a month, or a year previously. If the junior locator may acquire rights by entering the ground before there is any failure to do the required work, and while the statute gives the exclusive possession to the senior locator, any number of locations may be made and rights initiated at any time prior to the one at which the statute states that the claim shall be subject to relocation, and the person who follows the statute and makes the relocation on the 1st day of January will be too late, and may find that the right to locate after failure to do the work has been acquired by one of several others in the order of their locations previously made and before the work was required to be done by the original locator. The one who located six or eleven months before the time in which the work was required to be done had expired would have a better right than the one who had located one or five months in advance of such time; but, if the former failed to do the required work on his part, the right would become initiated in the latter, which would prevail over anyone who relocated

the ground on the 1st day of January, the time in which it is made relocatable by statute if the annual work is not done. Fraud would be encouraged, and the door opened for the evasion of the annual work, the purpose of which is to require the owner to develop the claim at least to that extent, or render his right subject to forfeiture and the claim to relocation: If others could initiate relocations on valid and existing claims, the question would arise whether the owner could relocate before they had lapsed, and if he could not, as an exception to the rule that others could, he would be tempted to have some one relocate for him in order to avoid doing the work. For the reasons stated, and as the Uhlig opinion does not mention *Belk* v. *Meagher*, and does not express an intention to overrule the principle therein announced, and affirmed in other decisions rendered about the same time, we do not think a result so revolutionary was intended to apply in cases generally, and that the Uhlig decision is applicable only to its own particular circumstances. It has already been so held, or that at most it is not controlling further than in actions in connection with proceedings for obtaining patents, by a number of courts and text-writers, and, so far as we are aware, by all who have determined that question.

In *Montagne* v. *Labay*, 2 Alaska, 575, the Uhlig case was examined, and it was held that it applies only in adverse proceedings, and only within its own limited sphere of exceptional facts, and *Belk* v. *Meagher* was followed, and held not to be overruled. In *Hoban* v. *Boyer*, 37 Colo. 185, 85 Pac. 837, decided more than a year after the Uhlig case, the Supreme Court of Colorado continued to adhere to the rule in *Belk* v. *Meagher*. In *Lockhart* v. *Farrell* (Utah) 86 Pac. 1081, the Supreme Court of Utah, the one by which *Lavagnino* v. *Uhlig* had been determined, said regarding the decision by the Supreme Court of the United States in that case: "Giving the Lavagnino case the construction contended for by the respondent is, in effect, to make it overrule *Belk* v. *Meagher* and *Gwillim* v. *Donnellan*, and to render it in conflict with the decisions of both federal and state courts on the question. We do not believe any such result

was intended by that decision. Likewise, to give it the meaning contended for renders it in conflict with the more recent decision of *Brown* v. *Gurney*." In a note in 68 L. R. A. 842-845, the Belk, Uhlig, and other cases are considered, and at page 837 appears the statement that "it is difficult to reconcile the decisions holding that one who relocates the claim after the original locator is in default in his assessment work will prevail over one who attempted to relocate the claim before the time for the performance of the assessment work had expired with the principle of the decision of the Supreme Court of the United States in the recent case of *Lavagnino* v. *Uhlig*, although it is not probable that the doctrine of these cases will be disturbed in consequence of that decision."

Numerous decisions in the state and federal courts in the mining states and territories from the Mexican border to the Canadian line, apparently without exception, support *Belk* v. *Meagher* and *Clipper Mining Co.* v. *Eli Mining Company*, *supra*, and *Gwillim* v. *Donnellan*, 115 U. S. 49, 5 Sup. Ct. 1112, 29 L. Ed. 348, in which it was said: "If, when one enters on land to make a location, there is another location in full force, which entitles its owner to the exclusive possession of the land, the first location operates as a bar to the second." Quoting with approval from the opinion in the Belk case, Justice Hawley, speaking for this court, in *Rose* v. *Richmond*, 17 Nev. 57, said: "A relocation on lands actually covered at the time by another valid and subsisting location is void; and this, not only against the prior locator, but all the world, because the law allows no such thing to be done." In one end of the balance we have only the Uhlig case, based on a section of the Revised Statutes which has no bearing on the question involved; and against this we have the numerous decisions, cited and uncited, supporting *Belk* v. *Meagher*, including our own in *Rose* v. *Richmond Mining Co.*, and the statutes which are clearly and directly applicable, and which would have to be overruled in order to maintain the judgment.

After the court had sustained an objection to the offer of appellants to prove that the notices of location were posted on the Portlands, and that they were valid, existing claims,

covering the ground at the time the Unions were located, they asked the court to admit the evidence subject to objection and to a motion to strike it out, so that its admissibility could be considered more carefully later; but the court refused to receive it, and consequently there is nothing in the record to show what acts were performed toward locating the Portlands. If they were located by posting the requisite notices on July 1, 1905, and by the proper marking of their boundaries within ninety days thereafter, the right to the ground covered by them would relate back to the time of the posting of the notices, and would in effect have been a segregation of the land from the public domain, so that the Unions could not have been validly located or initiated upon it on the 24th and 25th days of July, nor until after there was a failure to do the work required by the state statute to be done within ninety days from the posting of the notices. But if the Portland notices were so posted, and the claims were not staked or monumented within ninety days thereafter, then we think the locations were not completed under the act of Congress and the state statute, and, the land not having been marked within that period, so that its boundaries could be traced, it was not segregated from the public domain, although such posting carried the right to define the boundaries within ninety days. The period for this purpose has since been shortened by an act of the legislature to twenty days. (Stats. 1907, p. 419, c. 194.)

*Erhart* v. *Boaro*, 113 U. S. 530, 5 Sup. Ct. 561, 28 L. Ed. 1113, cited by appellants, is distinguishable; for it was said in the statement of facts there that "the evidence tended to show that, within ninety days from the discovery of the lode by Carroll, one French, on behalf of the plaintiff and Carroll, secretly caused the boundaries of the claim to be marked." It was correctly held there that the forcible eviction of the discoverer and locator from the vein or lode before the sinking of the shaft required by the Colorado statute and the prevention of his reëntry by threats of violence excuse him, as against the party keeping him out of possession, so long as he is kept out of it, from sinking the shaft required. There is no doubt that, if the locator discovered a vein and filed proper

notices on the Portlands on the unappropriated public domain, he was entitled to go on the ground and mark the boundaries, and in doing so float the locations and do the required work; but, if he never did anything but post the notices, it would seem that no piece of ground was ever defined for segregation · from the public domain, so as to notify or warn off others, or prevent the initiation of locations which would be good against a later one.

We find no errors in the record, except those resulting in different ways from the conclusion of the district court to adhere to the opinion in *Lavagnino* v. *Uhlig.* Upon the trial objection was sustained to evidence regarding the sinking of a shaft ten feet deep, or its equivalent, on the Unions, and the filing of certificates of location was objected to and withdrawn, because the work was not done and the certificates were not filed before this action was begun; and it is contended that proof of this work and the filing of those certificates were essential to plaintiffs' recovery. There was no supplemental complaint or pleading alleging that the work was done or completed or that the certificates were filed after the commencement of the suit to warrant its admission. We have recently held in the case of *Ford* v. *Campbell*, 29 Nev. 578, that the filing of a certificate of location is not essential to the validity of the claim, but relates to matters of proof. If the Portlands were not valid and existing locations at the time the Unions were located, and the Unions were located on the unappropriated public domain by posting notices and marking their boundaries in accordance with law, respondents would have become entitled to hold them for the ninety days allowed for doing the work, and by instituting this suit prior to that time could recover a judgment for possession and damages to the end of that period. If, under these circumstances, respondents failed to do the required work within ninety days, the claims would become subject to relocation by the appellants or others.

The court sustained objections to a series of questions by which it may be surmised that defendants sought to prove, upon the cross-examination of plaintiffs' witnesses, that the Portland notices were posted on the ground at the time the

Unions were located. The court properly limited the cross-examination to the matters brought out in the direct examination. This did not prevent defendants from making the witnesses their own after plaintiffs had closed their case in chief, nor the court from then allowing, in its discretion, a rigid examination if they were hostile.

The judgment is set aside, and the cause is remanded for a new trial, upon which defendants will be allowed to introduce evidence to show that at the time the Unions were located the ground was covered by the Portlands as valid and existing locations made by posting the requisite notices and by the defining of their boundaries within ninety days thereafter, and that by failure to do the work required by the state statutes the Portlands had lapsed at the time the Liberty and Justice claims were located.

NORCROSS, J., concurring:

I concur in the opinion of the Chief Justice, and express the following additional views, based upon my conception of the statutes and the decisions of the highest courts:

The right of respondents to offer proof that the Portland claims were valid and subsisting locations at the time the Union locations were made does not depend, as contended, upon any relations of privity between the locators of the Portland claims and themselves. They have the right to offer such proof, in order to establish the fact, if they can, that they have complied with the federal and state law as relocators of a prior existing claim, which had become, under the law, subject to relocation. Both the state and federal statutes have provided for the relocation of claims which have become subject to such relocation by reason of the failure to do the location work or annual assessment work provided for by law. A distinction is thus recognized, both by the federal and state laws, between a location and a relocation. If persons are claiming rights to the public domain as relocators, necessarily their rights depend upon the fact that a prior existing claim had become subject to forfeiture, and that by entering upon the ground and relocating it they had effected such forfeiture of the rights of the prior

locators and established rights in themselves.   They can only establish their right as relocators by proving the prior location, that it had become subject to forfeiture, and that they had made such forfeiture effectual by complying with acts necessary to make a valid relocation.   Where the right to make a location is initiated by the making of a discovery and the posting of a proper notice, but no further act is done to perfect the location, and thus segregate the same from the public domain, the ground is not subject strictly to relocation, for no prior valid location had been perfected.   In such a case the land does not cease to be a part of the public domain, never having been segregated therefrom, and thus it remains open to location.   It frequently happens that a person upon making a discovery posts a location notice, and in common parlance this is called a "location"; but legally it is not a location, and may never become such.   The first discoverer, who posts a valid notice, initiates a right which he is protected in and which he can follow up by doing the other acts necessary to perfect a valid location; but until he has done those other acts he has not acquired the right of exclusive possession given him by the statute upon a perfected location, which will have the effect of cutting off any inchoate right in another initiated in the meantime.

SWEENEY, J., being interested in the result of the litigation, did not participate in the foregoing decision.